COMMERCIAL BANK OF ST. LOUIS, APPELLEE, V. EASTERN
BANKING COMPANY ET AL., APPELLANTS.

FILED JUNE 3, 1897. No. 7319.

1. **Review: SERVICE OF SUMMONS: CONFLICTING EVIDENCE.** Where, col-
laterally, there was a question presented as to whether there had
been service of the summons on which the judgment questioned
was founded, and that question, upon fairly conflicting evidence,
was decided by the trial court, its findings, on appeal in this court,
will not be disturbed.

2. **Statutes: CONSTRUCTION.** A court will not give a retrospective effect
to a statute unless it is clear from the language used that the leg-
islature intended to give it that effect.

3. **Lien of Judgment in Federal Court: REGISTRATION: STATUTES.**
Where, by virtue of the holdings of the federal court, a lien had
attached to land in Nance county by reason of the rendition of a
judgment against the owner of such land by the circuit court of
the United States then sitting in Douglas county, the lien of such
judgment as against said land was not destroyed by an act of con-
gress afterward passed providing how a judgment lien thereafter
might be created as against land situated as was the land of the
judgment defendant.

APPEAL from the district court of Nance county.
Heard below before SULLIVAN, J. *Affirmed.*

The opinion contains a statement of the case.

*Hall, McCulloch & Clarkson,* for appellants:

Even if there was a judgment, no steps having been
taken to enforce it until long after the passage of the act
of congress relating to registration of judgments of the
federal courts, any lien which might have theretofore ex-
isted was wholly destroyed, and the levy and sale made
under the execution of 1890, upon land, the title to which
had not been in the judgment debtor since 1887, gave no
title whatever. (2 Freeman, Judgments [4th ed.], sec.
342; *Moore v. Holland,* 16 S. Car., 15; *Woodson v. Collins,*
56 Tex., 168; *Houston v. Houston,* 67 Ind., 276; *Gimbel v.
Stolle,* 59 Ind., 446; *Tarpley v. Hamer,* 9 Smeads & M.

[Miss.], 310; *Whitehead v. Latham*, 83 N. Car., 232; *Horbach v. Miller*, 4 Neb., 31; *Dartmouth Savings Bank v. Bates*, 44 Fed. Rep., 546; *First Nat. Bank of Washington v. Clark*, 40 Pac. Rep. [Kan.], 270.)

*Webster, Rose & Fisherdick, contra:*

Where the service is merely defective or irregular, the court acquires jurisdiction, and the judgment is valid until set aside or reversed in appropriate and direct proceeding. (*Knox v. Harshman*, 133 U. S., 152; *Isaacs v. Price*, 2 Dillon [U. S. C. C.], 351; *Salisbury v. Sands*, 2 Dillon [U. S. C. C.], 277; *Walker v. Robbins*, 14 How. [U. S.], 585; *Tallman v. Ely*, 6 Wis., 259.)

The judgment when rendered was, and continued to be, a lien on the lands of Tewksbury throughout the district, from the first day of the November term, at which it was rendered, at least to March 28, 1889, when the state act complementary to the act of congress relating to filing of transcripts of judgments of federal courts was passed with emergency clause. (*State v. Stein*, 13 Neb., 533; *State v. Palmer*, 10 Neb., 205; *Burlington & M. R. R. Co. v. Saunders County*, 17 Neb., 320; *State v. Cathers*, 25 Neb., 255; *Woodson v. Collins*, 56 Tex., 174.)

A lien which has once attached must remain until it is discharged by act of the parties, removed by subsequent legislation, or has expired by statutory limitation. (2 Black, Judgments, sec. 417; *Davidson v. Root*, 11 O., 98; *Bowman v. Hovious*, 17 Cal., 471; *West's Appeal*, 5 Watts [Pa.], 89; *Hays's Appeal*, 8 Pa. St., 182; *Gatewood v. Goode*, 23 Gratt. [Va.], 880.)

RYAN, C.

This is an appeal from a decree of the district court of Nance county, by which plaintiff's title to certain real property in said county was confirmed to the exclusion of the rights of appellant Burke. Briefly stated, the facts involved are as follows: On January 27, 1887, there was rendered in favor of the plaintiff, in the circuit court of

the United States for the district of Nebraska, a judgment in the sum of something over $3,000 against J. F. Tewksbury, then the owner of the real property in dispute in this action. By purchase Burke acquired the title of Tewksbury on January 19, 1889. Afterward an execution was issued under the aforesaid judgment, whereunder there was a sale through which plaintiff derived its title. The questions presented are, first, whether there was a valid judgment rendered against Tewksbury in the federal court; and second, if there was a valid judgment, was there a necessity that a transcript of it should have been filed in the office of the district court of Nance county to perpetuate its lien until the execution sale could be made.

It is urged that the judgment in the federal court is void because that court had no jurisdiction of Tewksbury, for the reason that, as is alleged, there was no service of summons on him. There were three parties named as defendants in the summons, and the return indorsed thereon was as follows:

"I hereby certify and return that on the 22d day of March, 1886, I received this summons, and on the 25th day of March I served the same upon the within named, E. Holland, Edward Cooper, and J. S. Tewksbury, in Weeping Water, Cass county, state and district of Nebraska, by delivering to and leaving with them a certified copy thereof, with all the indorsements thereon—J. S. Tewksbury acknowledging service hereon.

"ELLIS L. BIERBOWER,
"*U. S. Marshal for District of Nebraska.*
"By A. G. HASTINGS,
"*Deputy U. S. Marshal.*"

On the summons was also this indorsement:
"DISTRICT OF NEBRASKA, SS.

"I hereby accept service of a copy of the within summons this 25th day of March, 1886.

"J. S. TEWKSBURY.
"By TEWKSBURY & COOPER."

It was testified by Mr. Tewksbury that he and Mr. Cooper were not partners when the above acknowledgment of service by Cooper was signed, though they had been shortly before that time. He also testified that no service was ever made on him of any summons in said action. The judgment was by default. Aside from the above described proofs tending to show service of summons, it was testified by Mr. Hastings that it was his recollection that after looking at the return, and his attention being called to it, that, after the acceptance of service was indorsed by Mr. Cooper, Mr. Tewksbury on the same day returned to Weeping Water, and immediately thereafter was given a copy of the summons by Mr. Hastings. Mr. Wooley testified that in the spring of 1886, possibly in April, he met Mr. Tewksbury and Mr. Cooper on the street in Weeping Water, and they stopped the witness to talk about the suit in Omaha in the United States court. This witness could not say which, but one of the parties had a copy of the summons, and showed it to witness and talked about there being a suit with Holland on that $3,000 note. On cross-examination this witness identified the suit more satisfactorily as the one whereon was sold the land now in controversy. He further said the conversation between himself and Cooper and Tewksbury might have been in March or April, 1886. This witness further testified that on the trial of another action in December, 1886, wherein he himself was an attorney and Mr. Tewksbury was a party and a witness, that he, Mr. Wooley, asked Tewksbury if he had not been made a party defendant in the suit in the federal court, and Mr. Tewksbury admitted that he had, and that in said action he had been sued. It is therefore apparent that the question as to whether or not there had been service of summons on Mr. Tewksbury in the action in the federal court wherein judgment was rendered against Tewksbury was a disputed question of fact, heard and determined upon fairly conflicting evidence. It is a set-

53

tled rule that under such circumstances the finding of
the district court must stand.

The other contention of appellant is dependent upon
the construction which he insists should be given a cer-
tain act of congress.   It has already been stated that the
judgment was rendered January 27, 1887, in the federal
court.   On the 1st day of August, 1888, there was passed
an act by congress of which the part material to our pur-
poses is the first section, which provides: "That judg-
ments and decrees rendered in a circuit or district court
of the United States, within any state, shall be liens on
property throughout such state in the same manner and
to the same extent, and under the same conditions only,
as if such judgments and decrees had been rendered by
a court of general jurisdiction of such state; provided,
that whenever the laws of any state require a judgment
or decree of a state court to be registered, recorded, dock-
eted, indexed, or any other thing to be done, in a particu-
lar manner, or in a certain office or county, or parish in
the state of Louisiana, before a lien shall attach, this act
shall be applicable whenever the laws of such state shall
authorize the judgments and decrees of the United States
courts to be registered, recorded, docketed, indexed, or
otherwise conformed to the rules and requirements relat-
ing to the judgments and decrees of the courts of the
state." (U. S. Statutes at Large, v. 25, p. 357, sec. 1.)
The appellant insists that by the enactment of this fed-
eral statute the transcripting of a judgment of that
court in the office of the clerk of the district court of
Nance county became indispensable to the continued ex-
istence of a judgment lien, and that, therefore, it of neces-
sity results, from the conceded failure to file such a tran-
script, that the lien which existed previous to August 1,
1888, ceased to exist because of the enactment by con-
gress of the statute of which the first section is above
quoted.   To sustain this position there has been cited
*Dartmouth Savings Bank v. Bates*, 44 Fed. Rep., 546, a case
decided in the United States circuit court for the district

of Kansas. There is found in section 419, chapter 80, General Statutes of Kansas, 1868, these provisions: "Judgments of courts of record of this state, and of courts of the United States rendered within this state, shall be liens on the real estate of the debtor within the county in which the judgment is rendered, from the first day of the term at which the judgment was rendered. \* \* \* An attested copy of the journal entry of any judgment, together with a statement of the costs taxed against the debtor in the case, may be filed in the office of the clerk of the district court of any county, and such judgment shall be a lien on the real estate of the debtor within that county from the date of filing such copy." In the opinion in the case last above cited it was not disclosed whether the judgment therein under consideration was rendered before or after August 1, 1888, the date of the approval of the federal statute. By virtue of the provisions above quoted from the statutes of Kansas, judgments of the federal courts and of the courts of that state, in so far as securing liens outside the county in which judgment might be rendered were concerned, were placed upon the same grounds as early as 1868, and ever since that date this equality has remained. In *Bank v. Bates, supra*, Caldwell, J., in the course of his opinion, stated the reason on which had been predicated the rule that a judgment in the federal court in any state operated to create a lien on the property of the debtor situated anywhere in the district in which such judgment was rendered, for congress possesses no power to require any county officer to file or docket the transcript of a judgment rendered by a court of the United States. It was, said he, to remedy this that the act of 1888 was passed, which, while it made no attempt to require any county officer to register, docket, or index a judgment rendered by a federal court, nevertheless provided that if by a proper statute of the state such authority was conferred upon any county officer so to do, the effect as to creating a lien on property of the debtor in the county wherein such transcript

should be registered, etc., was to be the same as would result from the adoption of the same course with reference to the judgment of a state court. As this particular legislation had existed in Kansas since 1868, it was only required that congress should pass the act which it did in 1888, to give federal sanction to what had been attempted twenty years before by the legislature of that state, and that was to require the transcripting of a federal judgment to cause it to become a lien on property of the debtor situated outside the county wherein such judgment should be rendered. The opinion in *Bank v. Bates* merely held that the state statute was the proper complement of the law of congress to effect the purpose of both statutes, but whether this was with reference to a judgment rendered before August 1, 1888, we are not informed. This case, therefore, falls short of establishing what in argument was claimed for it. The discussion of it, however, renders it comparatively easy to state what was held in *First Nat. Bank of Washington v. Clark*, 40 Pac. Rep. [Kan.], 270, a case cited by appellant to sustain his contention that the federal statute passed in 1888 operated to relieve from the existing lien of a federal judgment all lands of the debtor not included within the boundaries of the county in which such judgment had been rendered. In this case the supreme court of Kansas discussed, but refused to commit itself with reference to, the proposition that a judgment of a court of the United States, under any circumstances, rendered in one county in Kansas, of its own force operated as a lien on all lands of the defendant situate in any other county of that state. What was in reality decided with reference to the statutes hereinbefore quoted is thus clearly stated in the conclusion of the opinion: "The statute of this state can have none the less force because passed long prior to the act of congress. In the most favorable view to the defendants in error, both acts must be treated as having been in full force and effect on the 1st day of August, 1888. As the law stood then, and ever since, it was

necessary, in order to make a judgment of the United States circuit court a lien on the lands of the judgment debtor prior to actual levy, that a copy of the journal entry should be filed with the clerk of the district court of Washington county. This was not done and the land was not actually seized by the marshal until December 6, more than four months after the passage of the act of congress. We are clearly of the opinion that this af-·forded more than ample time for compliance with the state statute, and that the lien of the federal judgment, if it ever had any (as to which we express no opinion), was lost before the execution was levied." In view of the fact that no journal entry was ever filed in the office of the clerk of the district court of Washington county, and of the further fact that the supreme court of Kansas, in this case, refused to consider whether, under the circumstances indicated, the lien of the federal judgment was operative against land in Washington county, it is very clear that the decision was controlled by the provisions in the state statute, unaffected by the federal statute. It therefore affords no sanction to the proposition as to which it was cited.

In this state the statute authorizing the filing of a transcript of a federal judgment in the office of the clerk of the district court of a county other than the county in which such judgment is rendered was approved March 28, 1889. The statute passed by congress provided: "Whenever the laws of any state require a judgment or decree of a state court to be registered, recorded, docketed, indexed, or any other thing to be done in a particular manner or in a certain office or county, or parish in the state of Louisiana, before a lien shall attach, this act shall be applicable whenever, and only whenever, the laws of such state shall authorize the judgments and decrees of the United States court to be registered," etc. In this language there is evidenced no intention to make the operation of the law retrospective, neither is there any provision giving time to register federal judgments already in exist-

ence with a view to preserving the liens thereof. In *State v. Stein*, 13 Neb., 529, it was said: "A court will not give a retrospective effect to a statute, unless it is clear from the language used that the legislature intended to give it that effect." (See, also to the same effect, *State v. Palmer*, 10 Neb., 204; *State v. City of Kearney*, 49 Neb., 337; *McIntosh v. Johnson*, 51 Neb., 33.) It results from the application of this rule that the lien which had attached before the adoption of the act of August 1, 1888, was not impaired by that enactment. The judgment of the district court is

AFFIRMED.