ARTHUR B. WOOD, TREASURER, APPELLEE, V. MCCOOK
WATER-WORKS COMPANY, APPELLANT.

FILED NOVEMBER 12, 1914.   No. 17,845.

1. **Taxation:** ASSESSMENT OF PERSONAL PROPERTY. The revenue law
as to the assessment of personal property examined, as set out
in the opinion, and construed to mean that such property shall
be listed and assessed with reference to the quantity held or owned
on the 1st day of April in the year for which the property is
required to be listed.

2. ———: ———: EVASION. One who owns personal property sub-
ject to taxation at the time when it is returnable for assessment
and taxation for any year cannot escape liability for the tax for
such year by subsequently devoting the property to a purpose which
would thereafter render it not subject to taxation, nor by a sale
of such property to a municipal or other corporation, in whose
hands such property thereafter would not be subject to taxation.

APPEAL from the district court for Red Willow county:
ERNEST B. PERRY, JUDGE. *Affirmed.*

*Frank E. Bishop, John E. Kelley* and *C. E. Eldred,* for
appellant.

*W. M. Somerville* and *C. D. Ritchie, contra.*

FAWCETT, J.

This action was brought by plaintiff in his official ca-
pacity, in the district court for Red Willow county, to re-
cover taxes upon personal property assessed against the
defendant for the year 1911. A general demurrer to the
petition was overruled, and, defendant declining to plead
further, judgment was entered for plaintiff for the amount
of the tax. Defendant appeals.

The petition alleges substantially: That on April 1,
1911, defendant was a corporation, with its principal office
and place of business and all of its property, upon which
the tax was assessed, located in the city of McCook, and
also in school district No. 17; that on that date defendant
was engaged in selling water to the city of McCook and its

inhabitants, was the owner of a valuable plant and of a franchise permitting it to engage in such business in that city; that on or about May 20, 1911, defendant, for the purpose of listing its franchise and personal property for taxation, made out a sworn statement and delivered the same to the assessor; that by such statement the company listed and valued all tangible personal property owned by it on the 1st day of April, 1911, at the sum of $43,550; that thereupon the assessor duly fixed and made a valuation of such property on the 1st day of April, 1911, at the sum named and fixed and made the assessed valuation thereof at the sum of $8,710; that on or about the 27th day of July, 1911, there was levied against the property a tax of 6.5 mills for state purposes, and on the 3d day of August, 1911, there was levied a tax for county, state and school district purposes aggregating 41.1 mills; that by reason of such listing, assessing and levying of taxes there became due and owing from defendant to plaintiff, as treasurer, the sum of $811.77 personal tax, no part of which has been paid; that on October 30 the said assessments were duly transcribed into the tax list of the county clerk, and on or about that date the county clerk attached a warrant to such tax list commanding the treasurer to collect the same; that on the 1st day of July, 1911, the defendant sold and delivered its water-works plant and all property connected therewith to the city of McCook, for the sum of $65,000; that on February 1, 1912, plaintiff issued a distress warrant directed against defendant for the amount of the tax and interest, and on February 8 the warrant was returned unsatisfied. Wherefore the plaintiff prays judgment for $811.77, with interest at the rate of 10 per cent. per annum from the 1st day of December, 1911.

The assignments of error are that the court erred in overruling the demurrer and in rendering judgment against defendant. The contention of defendant is that the sale and delivery by defendant of its property to the city of McCook on July 1 was prior to the completion of the assessment for 1911, and prior to the levy of any tax for that year; that the property was exempt from taxation

as soon as it became the property of the city; that the assessment was not completed and did not become final until after the value, as found by the local assessor, had been corrected by the county assessor and equalized by the county and state boards of equalization; that the levy of tax was not made and did not become a lien until after the property had been transferred to the city; that "the principal question involved then is: The property having been transferred into the hands of the city of McCook, where it was exempt from taxation, prior to the time the assessment was completed, and levy of tax made, and prior to the time when the tax would become a lien upon the property, was the attempted taxation void?" The district court answered this question in the negative.

In a typewritten memorandum, submitted by counsel for defendant by leave of court after the arguments at the bar, it is claimed that the statute does not fix any definite date when personal property shall be assessed either as to valuation or ownership; that the whole matter of assessment is progressive, and is not concluded until the work of the assessor, the county board and the state board is completed in the final levy made after all their work is done, which was August 3 in this case.

Prior to 1903, section 6, art. I, ch. 77, Comp. St. 1901, of the revenue law, provided: "Personal property shall be listed between the first day of April and the first day of June of each year, when required by the assessor, with reference to the quantity held or owned on the first day of April in the year for which the property is required to be listed." By an act approved April 4, 1903 (laws 1903, ch. 73), the legislature provided a system of public revenues, and repealed all of article I, chapter 77, as it had existed prior thereto. In the new act section 6, art. I of the prior act, above quoted, seems to have been omitted, but that the legislature did not intend to change the rule that assessments of personal property are based upon the amount of property owned by the taxpayer on April 1 is shown by the oath which the taxpayer is required to make to the schedule furnished him by the assessor, which is:

"I, ————, being duly sworn, say that the foregoing statement and schedule is true and contains a full and complete list of all property held by or belonging to me on the first day of April. * * * I further swear that, since the first day of April of last year, I have not directly or indirectly converted or exchanged any of my property temporarily, for the purpose of evading the assessment thereof for taxes, into nontaxable property or securities of any kind." Laws 1903, ch. 73, sec. 52. This oath has ever since been required of all taxpayers, and is now provided for in section 6339, Rev. St. 1913.

That the revenue law as to the assessment of personal property has been so construed by all taxing officers and taxpayers of the state since the act of 1903, the same as prior thereto, is a matter of common knowledge. Such being the fact, the courts will so construe it until the legislature has further spoken on the subject. The petition alleges that, after defendant made and delivered its schedule to the assessor on or about May 20, the assessor thereupon "duly fixed and made a valuation of all the tangible personal property belonging to said corporation on the first day of April, 1911." If the assessor "duly" fixed and made his valuation, he did so on or before the 1st day of June, 1911. Comp. St. 1909, ch. 77, art. I, sec. 116. It appears, therefore, from the allegations in the petition, that, at the time defendant sold the property covered by the schedule which it filed May 20, such property had been duly assessed by the county assessor a full month prior to the time of such sale. Conceding the defendant's contention that the assessment did not become final until after it had been acted upon by the state and county boards of equalization, we do not see how that can aid it. It knew that it had been assessed by the county assessor in the sum of $8,710, and that any tax levied upon that assessment would impose upon it a personal liability therefor. If any change in conditions had occurred after it had returned its schedule and an assessment had been made thereon by the assessor, which would have authorized the county board of equalization to give it any relief, it should have

applied to that board when it met on or about July 27, and
if the board had denied any relief to which it was entitled,
the statutes provided a plain and adequate remedy by ap-
peal to the district court.

Did the sale of the property on July 1 to the city, can-
cel defendant's liability upon the assessment because of the
fact that after the property passed to the ownership of the
city it thereafter would not be liable to taxation?  We
think the answer to this question must be adverse to de-
fendant.  The case is not different from what it would be
if, after defendant had filed its schedule and the assessor
had made the assessment, and while still owning the prop-
erty, it had changed the use of it to a purpose which would
relieve it from taxation.  Such a change would not relieve
it from liability.  *People v. Commissioners,* 104 U. S. 466.
In that case the relator was assessed for taxation as of
January 1, 1876, upon his personal estate, to the amount of
$60,000.  He made application, supported by affidavit, for
a reduction or remission of his assessment upon the ground
that the value of all his personal estate on January 1 did
not exceed $125,000, and that as to all except $5,500 it con-
sisted of money which "was continuously employed in the
business of exporting cotton from the United States of
America to foreign countries, through the customs depart-
ment of the United States aforesaid, and that said em-
ployment consists in purchasing and paying for the cotton
in different states of the United States, and actually ex-
ported by deponent in said business, and for the payment
of all the expenses of shipping the same as such exports."
The reduction and remission were both denied.  Upon writ
of *certiorari* the proceedings of the tax commissioners were
affirmed in the supreme court of the state of New York, and
its judgment was affirmed by the court of appeals, where-
upon relator prosecuted error in the supreme court of the
United States.  In the opinion by Mr. Justice Harlan it
is said:  "The plaintiff in error was assessed, upon his
personal property, as of January 1, 1876.  If the capital,
which he claims was uniformly and continuously employed
in the business of purchasing cotton for exportation from

the United States to foreign countries, through the customs department, was, in fact, in money on the 1st day of January, 1876, he could not escape a subsequent assessment of that money upon the ground that, at the time the assessment was made, it was invested in cotton for exportation to foreign countries." (If it had been so invested on the 1st day of January, it would not have been subject to taxation.) It will be observed that the court expressly holds that one who owns property subject to taxation at the time when it is returnable for assessment and taxation cannot escape liability for the tax by subsequently changing the character of his property by investing it in other property which would render it not subject to taxation. Suppose defendant, on July 1, had sold its property which had been assessed, and with the money obtained from the sale had purchased United States bonds, could it have escaped the payment of taxes? Clearly not. The fact that the assessment and the tax subsequently levied thereon had not become a lien upon the property, so as to make a purchaser thereof liable for the tax, is entirely immaterial. The city, of course, took the property free from any lien of the tax, but this did not relieve the defendant of its liability therefor.

The demurrer was properly overruled.

AFFIRMED.

LETTON, ROSE and SEDGWICK, JJ., not sitting.