HARRY H. ADAIR ET AL., APPELLANTS, V. WALTER E.
MILLER, TREASURER, APPELLEE.

FILED NOVEMBER 25, 1922.　No. 22702.

1. **Statutes:** CONSTRUCTION. Statutes should be construed as having a prospective operation only, unless a retrospective effect 's expressly declared or is necessarily implied from the express provisions.

2. **Taxation:** INTANGIBLE PROPERTY: PROSPECTIVE STATUTE. The section of the statute (Comp. St. 1922, sec. 5884) providing that intangibles, as defined by the statute, should be separately listed and should be taxed at 25 per cent. of the mill rate levied on tangible property, *held* to be prospective only in its operation and not to apply to notes and bonds which were listed for taxation on April 1, 1921, before the enactment in question had gone into effect.

3. ———: ———: ———. Under the old law, the status of personal property for the purpose of taxation had become fixed on April 1, 1921, and this status was not affected by the new law which went into effect on July 28 of that year.

APPEAL from the district court for Dakota county: GUY T. GRAVES, JUDGE. *Affirmed.*

*William P. Warner* and *Sidney T. Frum,* for appellants.

*Clarence A. Davis, Attorney General, Charles S. Reed* and *George W. Leamer, contra.*

Heard before MORRISSEY, C. J., ALDRICH, DEAN, DAY and FLANSBURG, JJ., REDICK and SHEPHERD, District Judges.

FLANSBURG, J.

This case calls for an interpretation of section 5884, Comp. St. 1922, providing for a special rate of taxation for certain properties which are described in the statute as "intangibles." The enactment (Laws 1921, ch. 133, art. VIII) carried no emergency clause and became a law on July 28, 1921. It provided:

"Moneys, gross credits, including corporation shares or stocks, * * * notes, * * * accounts, * * * securities, debentures, bonds, * * * shall be separately listed and shall be taxed on the basis of twenty-five per cent. of the mill rate levied upon tangible property."

The appellants, trustees of the estate of Marion O. Ayres, complain that certain notes and bonds, belonging to the estate and in their custody, which were, in fact, intangible properties, within the terms of the statute, were returned for taxation at their full value and were not separately listed or scheduled, as required by the act, and were assessed at the same full rate as other personal property, and not at 25 per cent. of that rate.

The question presented is whether or not the statute in question was intended to apply and govern the rate of taxation on "intangibles" for the year 1921. The trial court held that the statute was not operative as to personal property listed before the statute went into effect, and that the notes and bonds belonging to the estate of Marion O. Ayres were therefore properly assessed at the same rate as all other personal property, since such was according to the provisions of the law existing prior to the enactment in question.

The matter resolves itself, in short, to this; whether or not the statute is to be interpreted as retrospective or prospective in its effect.

It is necessary to consider the provisions of the law, existing in the year 1921, which pertain to the scheduling and assessing of personal property, and to determine how far the assessment for the year 1921 had actually progressed at the time the statute in question became effective, on July 28. The law at that time required that a person list for taxation the property of which he was owner, or which he held in trust, on April 1 of the year in which the property was to be assessed. Rev. St. 1913, sec. 6339; *Wood v. McCook Water-Works Co.*, 97 Neb. 215. These property lists were required to be transmit-

ted to the precinct assessor, whose duty it was to complete the assessment rolls, schedules and lists in his precinct and deliver them to the county assessor not later than the last Monday in May of that year. The county assessor was required to complete his revision of these lists and file them with the county clerk on or before the second Monday in June. Rev. St. 1913, sec. 6431. On the first Tuesday after the second Monday in June the statute required the county board of each county to sit as a board of equalization (Rev. St. 1913, sec. 6437), and the county assessor, after equalization, was required to prepare an abstract of the assessment roll and to forward it to the state board of equalization on or before July 10 of the same year. Rev. St. 1913, sec. 6442. The state board of equalization was required to meet on the third Monday of July (Rev. St. 1913, sec. 6447), and, after the state board had completed its work of equalization, both the county board and the state board were authorized to then fix the tax levy. Rev. St. 1913, secs. 6450, 6456. On or before the first Monday in August of such year the state board was required to transmit to the county clerk of each county a statement of the rate of taxation required for the general and other state taxes. Under these provisions of the statute the proceedings for the assessment of property and the levy of taxes would be, to a large extent, completed by the time the statute in question, containing the specific provision with regard to the taxation of intangibles, would go into effect; that is, on July 28, 1921.

Before the taxing authorities can fix the amount of a levy, it is necessary, as a basis for their action, that there be some official estimate of the value of all property subject to the tax, and a determination of the apportionment. In all the proceedings taken in the year 1921, prior to July 28 of that year, there was no statute then requiring that intangibles should be listed separately, nor that they should bear a special rate of tax. Boards

of equalization, acting under the laws as they then existed, unless they should interpret the statute in question as retroactive, would estimate the value of property for the purpose of the tax, and arrive at the apportionment and equalization of the tax, based upon the schedules and lists as made up under the then existing laws. When the statute in question, affecting intangibles, went into effect on July 28, the basis for the tax levy would so far have ripened into a finality that intangibles could not be separated and taxed as distinct and apart, under the provisions of the 1921 law, without then revising and working over all the work that had up to that time been done in the gathering of property schedules, valuations and equalization, for in all those steps intangibles would have been classed as personal property bearing the same rate of taxation as other personal property generally.

There is nothing in the statute which indicates that it was to have a retroactive effect. It declares that intangibles *"shall be separately listed and shall be taxed on the basis of twenty-five per cent. of the mill rate levied upon tangible property."* The legislature recognized the necessity of a separate listing and valuation of intangibles as a basis for the final levy. But surely it was not intended that in anticipation of the new statute, which would not go into effect until July 28, the taxing authorities should make the necessary changes in their method of procedure, beginning with April 1 of that year; nor, on the other hand, that after the law should go into effect, on July 28, all the steps taken up to that time by the taxing authorities of the state should be revised and altered so that a separate listing of intangibles should be made and the tax levy determined upon that new basis.

Under the old law the status of personal property for the purpose of taxation had become fixed on April 1, 1921. This status we do not believe was affected by the new law. It is a general rule of construction that stat-

utes should be construed as having a prospective oper-
ation only, unless a retrospective effect is expressly de-
clared or is necessarily implied from the express pro-
visions. 36 Cyc. 1205. The statute in this case must, we
believe, be interpreted as prospective in its effect, and
its meaning to be that, from and after July 28, intangi-
bles shall be listed separately whenever it is required,
under the law, that personal property be listed for tax-
ation, and that, from and after the time for that listing,
such property shall be entitled to the special tax rate.

A case very similar to the one at bar, where a like de-
cision was reached, is that of *Dodge v. Nevada Nat. Bank*,
109 Fed. 726, approved in *Air-way Electric Appliance
Corporation v. Archer*, 279 Fed. 878. See, also, *New
York Railways Co. v. City of New York*, 218 N. Y. 483.

This interpretation disposes of the case, and it is un-
necessary to pass upon the other questions presented, or
whether or not the form of action here was maintainable.

The judgment of the lower court is therefore

AFFIRMED.