CLARENCE G. BLISS, APPELLEE, V. GEORGE L. REDDING ET AL.: ELIZABETH TYNON ET AL., ADMINISTRATRICES, APPELLANTS.

FILED APRIL 17, 1931. NO. 27649.

*Paul Jessen* and *Ernest F. Armstrong,* for appellants.

*C. M. Skiles, Edgar Ferneau, Fred G. Hawxby* and *John A. Skiles, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

Goss, C. J.

Elizabeth Tynon and Josephine Tynon Vance, administratrices of the estate of William Tynon, mortgagees, appealed because their mortgage, though originally first, was decreed to be second to the mortgage represented by the receiver.

On June 15, 1929, the department of trade and commerce took over the Nemaha County Bank, and on August 12, 1929, Clarence G. Bliss, secretary of the department, was appointed receiver for the bank. Among the assets was a note of $2,500, dated February 25, 1924, and a mortgage to secure it, executed February 27, 1924, on 40 acres of land in Nemaha county, both note and mortgage executed by defendants George L. Redding and Fannie Redding, husband and wife. This mortgage recited that it was "subject to a certain mortgage of three thousand dollars ($3,000) to Nemaha County Bank, which mortgage is recorded in Book 37, Mortgages, page 344." The mortgage was duly recorded March 1, 1924. On March 5, 1929, the Reddings executed and delivered a $2,500 note, due six months after date, in favor of the bank, but recited that it was not delivered and accepted in payment but for the purpose of extending the time of payment of the former described note.

On March 31, 1915, the same makers had executed and delivered to the Nemaha County Bank their note for $3,000, due three years after date; and to secure the payment thereof the same makers executed and delivered their mortgage on the same 40 acres, which mortgage was recorded on April 1, 1915, in Book 37 of Mortgages, on page 344. On April 17, 1915, this last described note and mortgage were sold and assigned by Nemaha County Bank to William Tynon, now deceased, who is represented herein by the defendants as administratrices of his estate. Tynon paid full face value for the note and mortgage. On said April 17, 1915, the Nemaha County Bank, in writing, assigned to William Tynon the mortgage and the debt secured thereby, but this assignment was not filed for record and recorded until February 15, 1927, when it was re-

corded in Book 49, at page 645. Redding and wife annually paid the interest on said note and mortgage up to March 31, 1926. This is the mortgage to which plaintiff's mortgage was expressly made subject.

The court found and decreed that the $3,000 note became due March 31, 1918; that the cause of action accrued on the note and mortgage at that time; that the statute of limitations on said mortgage expired on March 31, 1928; and, as this suit was not commenced until March 3, 1930, that the mortgage is barred by the statute of limitations, has ceased to be a lien as to plaintiff's mortgage and is subject thereto, the receiver being described by the district court "as a subsequent incumbrancer for value." The court found and decreed plaintiff's lien to be first for an amount stated and the Tynon mortgage to be second for an amount stated and ordered foreclosure in the usual form. The defendants Redding promptly filed a request for a stay but were brought here on appeal.

Both parties agree that this case depends entirely on the construction to be placed on the act of April 1, 1925, being chapter 64, Laws 1925, amending section 8507, Comp. St. 1922. This section as amended is now known as section 20-202, Comp. St. 1929.

The full section under consideration, paragraphed as in the session laws, is as follows:

"An action for the recovery of the title or possession of lands, tenements, or hereditaments, or for the foreclosure of mortgages thereon, can only be brought within ten years after the cause of action shall have accrued: Provided, no limitation shall apply to the time within which any county, city, town or village or other municipal corporation, may begin an action for the recovery of the title or possession of any public road, street, alley or other public grounds or city or town lots.

"For the purposes of this act, a cause of action for the foreclosure of a mortgage shall be deemed to have accrued at the last date of the maturity of the debt or other obligation secured thereby, as stated in, or as ascertainable from the record of such mortgage or in an extension there-

of duly executed and recorded, and if no date for any maturity be stated therein or be ascertainable therefrom, then not later than twenty years from the date of said mortgage: Provided, however, if the mortgage creditor shall, before the mortgage is barred under the provisions of this act, refile in the recorder's office the mortgage, or a sworn copy thereof for record, then said cause of action shall not be barred until the expiration of ten years from the date of said refiling: Provided, further, that the time within which an action may be brought upon a mortgage having no date of maturity stated therein shall not be more than ten years from the maturity of the debt secured thereby.

"At the expiration of ten years from the date the cause of action accrues on any mortgage as is herein provided, such mortgage shall be presumed to have been paid, and the mortgage and the record thereof shall cease to be notice of the mortgage as unpaid and the lien thereof shall then cease absolutely as to subsequent purchasers and incumbrancers for value; said period of ten years shall not be extended by nonresidence, legal disability, partial payment, or acknowledgment of debt.

"No action for the recovery of the title or possession of lands, tenements, or hereditements; or for the foreclosure of a mortgage thereon shall be begun after one year from the passage of this act by any person whose right of action would be otherwise barred hereby, unless within such year, the holder of an existing mortgage which would otherwise be barred hereby shall file for record a duly executed extension of such mortgage and such period of one year shall not be extended by nonresidence or legal disability."

The decree bases the result squarely on the sole ground that the receiver was "a subsequent incumbrancer for value." It would seem that in holding the Tynon mortgage still enforceable against the land the district court, as between the mortgagee and mortgagors, gave established force and effect to section 8522, Comp. St. 1922, now section 20-216, Comp. St. 1929. That section follows:

"In any cause founded on contract, when any part of the principal or interest shall have been voluntarily paid, or an acknowledgment of an existing liability, debt, or claim, or any promise to pay the same shall have been made in writing an action may be brought in such case within the period prescribed for the same, after such payment, acknowledgment, or promise."

We have held that under this section a part payment on the debt or interest thereon tolls the statute on a mortgage securing the debt. *Teegarden v. Burton*, 62 Neb. 639; *McLaughlin v. Senne*, 78 Neb. 631; *Gillilan v. Fletcher*, 80 Neb. 237; *Girard Trust Co. v. Paddock*, 88 Neb. 359.

Was the plaintiff within what was meant by the legislature when it described a subsequent "incumbrancer for value?" The statute, heretofore quoted, provides that ten years from the date the cause of action accrues the record shall cease to be notice of the mortgage as unpaid, "and the lien thereof shall then cease absolutely as to subsequent purchasers and incumbrancers for value." The Tynon mortgage became due and a cause of action accrued on it March 31, 1918, good for ten years more against the world. Plaintiff's principal, the bank (into whose shoes he stepped when he was appointed receiver), became an "incumbrancer" on March 1, 1924, by reason of its $2,500 mortgage. The bank mortgage was by the same makers as the Tynon mortgage and was expressly subject to it. These makers have always continued to own the property and are defendants here. The bank held its mortgage as a second mortgage for many years and it is still second unless the term "subsequent incumbrancer" can be said to be retrospective. Appellants argue that it means only one whose incumbrance is secured after the Tynon mortgage had failed to be refiled on or after March 31, 1928.

Language similar in effect to that under consideration has been construed by this court. It is true it involved a chattel mortgage, but we cannot see that that makes the principle of construction, or the meaning of the word "subsequent," any different. The case is *Arlington Mill & Elevator Co. v. Yates*, 57 Neb. 286. The opinion was by

Irvine, C. The subject is concisely stated on page 291 as follows: "Next it is said that the mill company is protected by section 16, chapter 32, Compiled Statutes, whereby a chattel mortgage 'shall cease to be valid as against the creditors of the person making the same, or subsequent purchasers or mortgagees in good faith, after the expiration of five years from the filing of the same or copy thereof.' While there is some conflict as to the construction of similar statutes, the better authority and the better reason favor the view that the object is to protect persons who acquire rights after the expiration of the time named, not to protect those rights accrued when they were bound to take notice of the record, but against whom enforcement is not sought until after the period. *Farmers & Merchants Bank v. Bank of Glen Elder,* 46 Kan. 376; *Nix v. Wiswell,* 84 Wis. 334." The syllabus on this point is: "The statute, whereby a chattel mortgage ceases to be valid as against creditors or subsequent purchasers or mortgagees in good faith after the expiration of five years from the filing thereof, protects only creditors, purchasers and mortgagees whose rights accrued after the five years."

The above cited case of *Farmers & Merchants Bank v. Bank of Glen Elder,* 46 Kan. 376, holds: "A subsequent mortgagee, who becomes such before the expiration of the year from the first filing of a prior chattel mortgage, cannot take advantage of an omission to renew the chattel mortgage within the year." It follows *Howard v. First Nat. Bank of Hutchinson,* 44 Kan. 549, which expressly construed the words "subsequent purchasers or mortgagees in good faith" to mean only those who took after the expiration of the year allowed by statute from the filing of the mortgage.

A New York statute requires chattel mortgages to be filed and provides that they should "cease to be valid as against the creditors of the person making the same or against subsequent purchasers or mortgagees in good faith, after the expiration of one year from the filing thereof," unless they should be refiled within thirty days before the expiration of the year, with a statement showing them to

be still in force. A mortgage on file, but never refiled, though in force when another was taken, while the other was refiled each year, was held to be prior and valid against the other. The opinion by Denio, C. J., holds: "The omission to refile a chattel mortgage pursuant to the third section of the act on that subject does not render it invalid as against purchasers or mortgagees intermediate the original filing and the omission to refile. The term 'subsequent' in the third section of the act, means after the time for refiling has elapsed." *Meech v. Patchin,* 14 N. Y. 71.

1 Wood, Limitations (4th ed.) 68, sec. 12b, says: "It is generally held, as stated in section 12, that a statute of limitations will not be given retroactive operation unless it appears by express provisions or necessary implication that such was the legislative intent. This has been held in equitable actions; actions to foreclose mortgages; actions by a state or municipality; actions relating to real estate, and actions on judgments."

In *War Finance Corporation v. Thornton,* 118 Neb. 797, a decision that the statute there under consideration did not operate retrospectively is supported by this text on page 800: "A well-recognized rule of statutory construction, and one firmly established in this jurisdiction, is that a statute will be held to operate prospectively and not retrospectively unless the legislative intent or purpose that it should operate retrospectively is clearly disclosed. The following are some of the decisions of this court supporting the rule announced: *Blunk Bros. v. Kelley,* 9 Neb. 441; *State v. City of Kearney,* 49 Neb. 337; *McIntosh v. Johnson,* 51 Neb. 33; *Commercial Bank of St. Louis v. Eastern Banking Co.,* 51 Neb. 766; *Adair v. Miller,* 109 Neb. 295; *State v. Federated Merchants Mutual Ins. Co.,* 117 Neb. 98."

Until March 31, 1928, the bank, as holder of the $2,500 mortgage, expressly made subject to the prior $3,000 mortgage, would not have claimed that it was more than a junior incumbrancer. We think the legislature intended to provide a cure and a remedy for stale mortgages—to

protect those purchasers and incumbrancers who, on searching the records, find no mortgages or incumbrances except those on which the statute has run, and then become purchasers, mortgagees or incumbrancers. It is abhorrent to equity, and an unworthy and unnecessary construction of the statute, to hold that this bank or its receiver, in such circumstances as exist here, may outrank a senior mortgage by a junior mortgage. It accords with standard rules of construction to say that a subsequent incumbrancer for value is one who obtains his incumbrance after the statute has run against the prior incumbrance, as shown by the public record relating to the latter; that the statute operates prospectively.

For the reasons stated, the judgment of the district court is reversed, with directions to place the lien of the appellants ahead of that of the appellee.

REVERSED.