TEACHERS' ASSOCIATION OF PUERTO RICO, Plaintiff and Appellee, *v.* RAFAEL SANCHO BONET, TREASURER OF PUERTO RICO, Defendant and Appellant.

No. 7652.   Argued December 14, 1938.—Decided March 24, 1939.

B. *Fernández García, Attorney General,* and *C. Andréu Ribas, Assistant Attorney General,* for appellant.   *Virgilio Brunet* for appellee.

MR. JUSTICE WOLF delivered the opinion of the Court.

On August 6, 1931, pursuant to express legislative authority, the Commissioner of the Interior sold a parcel of land measuring 880 square meters to the Teachers' Association of Puerto Rico.   The sale contained a condition subsequent to the effect that the purchaser should construct, within a term of five years, "a two-story building, adapted to the purposes of the association, and at a cost of not less than fifty thousand dollars ($50,000). . ." (See Joint Resolution No. 16

of 1925, Session Laws, p. 1018.) The condition was fulfilled thereafter and the building known as the "Teacher's Temple" (Templo del Maestro) was formally inaugurated during the month of April, 1935.

On January 15, 1935, for purposes of taxation, the Treasurer of Puerto Rico "assessed" the lot to the Association, and thereafter collected the tax corresponding to the fiscal year 1935–1936. The taxpayer alleged that according to Section 291 of the Political Code (Revived Statutes 1911, page 551) the land had become exempt from taxation in April 1935, when the Association's building was completed. It maintained, therefore, that no liability for taxes arose for the ensuing year on July 1935. Accordingly, the payment was made under protest, and the present suit filed. The Treasurer appeals from a judgment in favor of plantiff.

It might be well to explain that although this appeal only involves the return of the property tax on the lot for the fiscal year 1935–36, the complainant originally sought to recover the taxes for several years prior thereto. The original judgment of the trial court denied recovery and it was only on reconsideration that the return of the taxes corresponding to 1935–36, amounting to $114.82, was decreed.

The reasoning of the court was the following:

"The parties have submitted to the court a motion to reconsider the judgment in this case in so far as it denies the refund of the protested tax corresponding to the fiscal year 1935–36, as the plaintiff believes that such a tax should have been canceled, for according to Section 291, subdivision (e) of the Political Code, the lot as well as the building were exempt from taxation; and because even though the tax became imposed by section 295 of the Political Code on January 15, 1935, the same was not payable, or due, until July 1, when the fiscal year 1935–36 began, according to section 330 of said code, on which date the building known as 'Teacher's Temple' was finished and in use as an educational and literary center and inasmuch as from April 1935 both the building and lot became, exempt from taxation pursuant to Section 291, supra, the tax collected for the fiscal year 1935–36 seems contrary to law and should in justice be returned."

Subdivision (e) of Section 291 of the Political Code, supra, provides:

"Section 291. The following property shall be exempted from taxation:

" .        .        .        .        .        .        .

"(e) Every building used and set apart exclusively for religious worship, and the pews and furniture within the same; every building used and set apart for educational, literary, scientific or charitable purposes, and the furniture, appliances and apparatus appurtenant thereto; and every tract of land, not exceeding five cuerdas in extent, upon which such building or buildings is or are situated: *Provided,* That such grounds and buildings are not leased or otherwise used with a view to the pecuniary profit of either the lessor or lessee."

We have no doubt that the building when finally completed and dedicated fulfilled the conditions of the above section and hence would in due time be entitled to the exemption therein provided. The sole question before us turns upon the determination of the date upon which the personal liability of a taxpayer for the taxes of any fiscal year first attaches, inasmuch as changes in the use or ownership of the property after that date do not affect such liability.

Appellee cites jurisprudence to the effect that an exemption of the nature now under consideration may attach as soon as the construction of the cultural or religious edifice is commenced. We have examined the authorities and are forced to conclude that they do not represent the majority opinion. In 34 A. L. R. 634, at page 672, it is stated:

"Land on which buildings to be used for charitable purposes are in the course of erection, or are in good faith contemplated, is generally held not exempt from taxation. Boston Soc. v. Boston (1880) 129 Mass. 178; Children's Seashore House v. Atlantic City (1902) 68 N.J.L. 385, 59 L.R.A. 947, 53 Atl. 399; Institute of Holy Angels v. Ft. Lee (1910) 80 N.J.L. 545, 77 Atl. 1035 ... more cases cited ..."

There is a well-known general principle that a statutory exemption from taxation must be strictly construed.

Section 291, supra, clearly exempts only the *"building used and set apart* for educational, literary, scientific . . . purposes . . .; and every tract of land, not exceeding five *cuerdas* in extent, upon which such building or buildings *is or are situated."* (Italics supplied.) To enjoy the privilege the building must be both used and set apart for the especially appointed purpose. The clear words of the statute are alone sufficient to defeat the contention of the appellee.

Two errors are assigned by the Treasurer. First, the appellant maintains that the court erred in partially reconsidering its original judgment, because the motion for reconsideration was not supported by any jurisprudence or principle of law. If it is accepted that a court has the power to modify or set aside, *sua sponte,* its own judgments there is no reason to condemn such action by the mere fact that the losing party, in moving for such o modification, fails to cite jurisprudence. It falls within the power of a court to correct what it believes to have been a mistaken holding and while jurisprudence might have strengthened the position assumed, it was not indispensable. Furthermore, in this particular case, the plaintiff set forth in the motion for reconsideration the law on which it relied for its petition.

The remaining error is really important. The Treasurer maintains that when real property is "assessed" pursuant to Sections 298 et seq. of the Political Code, as of January 15th of any fiscal year, the person to whose name it is assessed becomes immediately liable for the payment of the property taxes corresponding to such assessment, i.e. those of the next fiscal year to commence on the following July 1st. Based on these premises, the Treasurer contends that any change intervening in the ownership or in the taxable nature of the property subsequent to January 15th, though it occur prior to July 1st when the instalment for the first semester of the tax becomes due, does not affect the liability of the owner listed as of January 15th. He is still responsible for the payment of the whole tax.

The parties in paragraph (f) of their stipulation of facts, agreed upon the following circumstances:

"(F) That no building had been put up nor did any exist on said lot at the date when the tax mentioned was imposed."

The above paragraph seemingly contains an admission in favor of the Treasurer. The assessment (*imposición*) of a tax must follow a valid assessment of the property for tax purposes. Inasmuch as the taxpayer raises no question as to the validity of the assessment of the property nor as to its completeness we feel bound to find that both of those requirements were fulfilled.

Section 298 of the Political Code provides that real property shall be assessed "to the person who is either the owner or the possessor thereof on the fifteenth day of January and the person appearing of record on the fifteenth day of January shall be held to be the true owner thereof."

Although we have been unable to find any specific statutory disposition or local decision as to the moment when personal liability for a property tax first attaches in this jurisdiction, the uniform decisions of various states of the union have expressed a well-defined criterion. The date upon which the assessment of property for tax purposes is completed seems to be accepted by the majority as determinative of such liability.

The necessity of having a date, prior to the actual moment of collection, whereupon the state can definitely estimate its taxable source for the coming fiscal year is obvious. It takes time to prepare the assessment list of the property, the tax-roll and the tax receipts. The taxable status of property should be unaltered after a certain time and prior to the date of the payment of the tax as the Treasurer must have a fixed basis upon which to float loans, increase or reduce taxes, etc.

This, we deem, is the fundamental reason for the rule. Furthermore, collection would be rendered uncertain and

impractical if the state had to allow for exemptions, trace sales to new vendees or apportion taxes between subsequent owners during the same year.

In cases of sale to transferees who are themselves exempt from taxation, it has been held that the owner of the land at the time of the assessment (*tasación*) becomes personally liable to pay the taxes imposed thereon. The Attorney General of Puerto Rico once rendered an opinion to that effect. 14 Op. Atty. Gen. 448. See also *Gloster Lumber Co., Inc.* v. *Adams County,* 163 So. 540; *Buckout* v. *City of New York,* 82 App. Div. 218 (N.Y.); *Prytania St. Market Co.* v. *City of New Orleans,* 110 La. 835, 34 So. 797; *Wood* v. *McCook Waterworks Co. et al.,* 149 N. W. 417; *New Orleans Bank and Trust Co.* v. *City of New Orleans,* 147 So. 42, 176 La. 946; *City of Oakland* v. *Whipple,* 39 Cal. 112 and 61 Corpus Juris 171, par. 126.

In the *Wood* case, supra, it is said:

"Did the sale of the property on July 1st to the city cancel defendant's liability upon the assessment because of the fact that after the property passed to the ownership of the city it thereafter would not be liable to taxation? We think the answer to this question must be adverse to defendant. The case is not different from what it would be if, after defendant had filed its schedule and the assessor had made the assessment, and while still owning the property, it had changed the use of it to a purpose which would relive it from taxation. Such a change would not relieve it from liability. New York v. Commissioners, 104 U. S. 466, 26 L. ed. 632."

At another place, the court says:

"Suppose defendant on July 1st had sold its property which had been assessed, and with the money obtained from the sale had purchased United States bonds: Could it have escaped the payment of taxes? Clearly not. The fact that the assessment and the tax subsequently levied thereon had not become a lien upon the property, so as to make a purchaser thereof liable for the tax, is entirely immaterial."

The reasons for fixing a time from which personal liability attaches are thus expressed by Judge Cooley in his outstanding treatise on the subject of taxation:

"Time for assessment. Assessments are made periodically, and in many of the states every year. When an annual assessment is required, if the officer merely copies for one year the roll for the preceding year, the assessment will be invalid. The customary regulation is that the assessment shall be made or completed on a certain day, or that it shall be made as of a certain day. This fixes the liability of persons and property to taxation for the year. There are some inconveniences and inequalities, resulting from this, but some regulation of the kind is indispensable. A force of tax officers cannot be kept employed for the year in watching the transfers of property, the movements of persons, and vicissitudes of business, in order to equalize the charges upon them; periodical assessments, if they produce injustice in one case, may correct it in the next, and on the whole are likely to be fair. At any rate, they constitute the best regulation the law can establish. 'In the imposition of taxes, exact and critical justice and equality are absolutely unattainable. If we attempt it, we might have to divide one year's tax upon a given article of property among a dozen different individuals who owned it at different times during the year, and then be almost as far from the desired end as when we started. The proposition is utopian. The legislature must adopt some practicable system; and this practicable system is found to be the one whih has been indicated. Every person is therefore to be taxed for the year upon his personalty, estimated as of the time of the assessment, and every parcel of real estate according to its value as set down in the proper list or roll. Changes in the ownership of property, or in the value after the periods of assessment, cannot be taken notice of in taxation until the time for a new assessment has arrived. This is the general rule." Cooley on Taxation, vol. 3, p. 2138, sec. 1062.

Since it is herein admitted that the tax had been assessed before any building was erected upon the lot, the difficulty of determining when such assessment was completed has been removed.

Under the circumstances and in view of the authorities cited, the judgment of the lower court must be reversed.

Mr. Chief Justice Del Toro took no part in the decision of this case.