STATE, EX REL. JOHN STEVENS, APPELLANT, V. J. T. NICKERSON, COUNTY CLERK, ET AL., APPELLEES.

FILED MARCH 13, 1915. No. 18,816.

Licenses: HUNTING AND FISHING: STATUTE: CONSTITUTIONALITY. The provisions of section 2695, Rev. St. 1913, imposing license fees upon persons desiring to hunt and fish in this state and requiring such fees to be paid to the state treasurer for the benefit of the state school fund, are not in conflict with section 5, art. VIII of the constitution.

APPEAL from the district court for Furnas county: ERNEST B. PERRY, JUDGE. *Affirmed.*

*John Stevens, pro se.*

*Willis E. Reed, Attorney General,* and *L. B. Fuller, contra.*

BARNES, J.

Action in the district court for Furnas county for a peremptory writ of mandamus to compel the respondent J. T. Nickerson, as county clerk of said county, to pay over to the county treasurer the money collected by him for hunting and fishing licenses for the year 1913. An alternative writ was allowed and issue joined thereon. The only question presented for determination is whether such license money belongs to the county school fund or the state school fund. The district court found for the respondents and denied the application for a peremptory writ, and the relator has appealed.

It is contended that the district court erred in refusing the relief prayed for, and in giving force and effect to that part of section 2695, Rev. St. 1913, which is alleged to be in direct conflict with section 5, art. VIII of the constitution of the state. That section of the constitution reads as follows: "All fines, penalties, and license moneys, arising under the general laws of the state, shall belong and be paid over to the counties respectively, where

the same may be levied or imposed, and all fines, penalties and license moneys arising under the rules, by-laws, or ordinances of cities, villages, towns, precincts, or other municipal subdivision less than a county, shall belong and be paid over to the same respectively. All such fines, penalties, and license moneys shall be appropriated exclusively to the use and support of the common schools in the respective subdivisions where the same may accrue." The legislature, at the session of 1901, passed an act to protect fish and game, insectivorous, song and other birds, within the state of Nebraska, and to provide penalties for the violation thereof, and to create a game and fish commission for the state of Nebraska and define its powers and duties. Laws 1901, ch. 36.

By section 1, art. IV of the above act (Rev. St. 1913, sec. 2695) it was provided: "The game and fish commissioner shall, upon application and the payment to the state treasurer of the fee required, issue to any nonresident of this state, a license authorizing such licensee in person within this state to hunt for and kill game, and to fish for and take fish, during the open season for such game and fish, and to have in his possession and dispose of the same subject to all of the restrictions imposed by this chapter: *Provided,* the commissioner may deliver to the county clerks of the several counties blank licenses bearing his signature or a facsimile thereof, and the same may in such case be issued by such clerks in the name of the commissioner upon the terms and conditions above prescribed. All blank licenses delivered to the several county clerks shall be numbered by the commissioner, and when such license shall have been issued by the county clerk of any county as herein provided, he shall immediately notify the state treasurer by mail stating the number of such license, the name and residence of the licensee, and the date when issued, and shall remit the license fee to said state treasurer, who shall keep a record of all licenses issued under this chapter, which shall be open for inspection as in case of other public records of the state." Section 3, art. IV of the same act, provides that licenses may be issued to

residents of the state under the same terms and conditions as in case of licenses to nonresidents of the state. It is apparent that where the game and fish commissioner has delivered to a county clerk of any county a supply of licenses, and said clerk issues them to applicants and collects the license fee, he is acting as a representative of the state game and fish commissioner, who alone has the power to impose the license.

It is argued that the money derived from the sale of hunting licenses is license money arising under the general laws of the state, and that such money cannot constitutionally go anywhere except into the treasury of some county; that Furnas county has a better claim to the money than any other county. This would be so if the license was levied or imposed in Furnas county. The act providing for the issuance of such licenses distinctly says that the license shall be issued by the state game and fish commissioner. It is imposed by the state without reference to any county, and for the benefit of all the schools of the state. To sustain appellant's contention would require us to declare the provisions of the act relating to game and fish unconstitutional. In *Pleuler v. State*, 11 Neb. 547, 555, it was said: "To justify a court in pronouncing an act of the legislature unconstitutional, it must be clear and free from reasonable doubt that it is * * * clearly forbidden by the paramount law."

The constitution does not specifically forbid the imposition of a license by the state at large. The legislature was constitutionally free to provide by what authority the licenses in question should be imposed upon those desiring to hunt and fish. The constitutional provision applies only to license money imposed by a county or some minor municipal corporation, and when a county imposes a license by virtue of a general law authorizing it so to do, such license money belongs to the county school fund. It does not forbid the state itself to impose licenses and direct how such money shall be used for the benefit of the schools. The legislature can exercise such general powers as are not forbidden by the constitution. The New Standard Dic-

tionary defines *impose* as to "levy or exact as by authority."
It is apparent that the legislature meant to confer au-
thority upon the state treasurer to collect the license mon-
eys in question. The game and fish commissioner and the
various county clerks are agents of the state, and there is
no conflict between the provisions of the act and those of
the state constitution. The intent of the legislature does
not seem obscure.

We are unable to see how the trial court could have ren-
dered any other judgment than the one which he pro-
nounced in this case. The judgment of the district court
is therefore

AFFIRMED.

LETTON and FAWCETT, JJ., not sitting.