PERRY *v.* HOGARTH.

1. Statutes—Purpose of Amendment.
   Purpose of amendment is to make such addition to, or change in, original act as in judgment of legislature will better carry out purpose for which it was enacted.

2. Same—Amendment Considered as if Part of Original Act.
   Amendment to statute will generally be considered as part of original act and entire act as amended be given construction which would be given it if amendment were part of original act.

3. Licenses—Disposition of Fees—Constitutional Law.
   In absence of constitutional restriction, disposition of moneys collected as license fees is within discretion of legislature.

4. Same—Tax.
   That revenue may be incidentally derived from license fees does not in itself determine that it is tax and not license, nor does disposition made of such fees have this effect.

5. Game—Statutes—Amendment—Repeal—Constitutional Law.
   Act No. 305, Pub. Acts 1931, providing that tax on certain State lands shall be paid out of "game protection fund" when in hands of State treasurer, was not repealed by Act No. 325, Pub. Acts 1931, amending Act No. 286, Pub. Acts 1929, providing for protection of game animals, birds, etc., and regulating manner of hunting them; nor is said act unconstitutional.

Appeal from Ingham; Collingwood (Charles B.), J. Submitted November 4, 1932. (Docket No. 223, Calendar No. 36,699.) Decided January 3, 1933.

Bill by Lloyd Perry and others against George Hogarth, Director of the Department of Conservation, and others to enjoin distribution of moneys from game protection fund under Act No. 305, Pub.

Acts 1931.   Bill dismissed.   Plaintiffs appeal.   Affirmed.

*Willis B. Perkins, Jr.,* for plaintiffs.

*Paul W. Voorhies,* Attorney General, and *Hugh E. Lillie,* Assistant Attorney General, for defendants.

Sharpe, J.   Act No. 116, Pub. Acts 1917, provided for a tax of five cents per acre upon State tax homestead and State swamp lands under the control and supervision of the public domain commission to be paid into the treasury of the county in which such land was situate on the first day of December in each year out of any moneys in the general fund of the State not otherwise appropriated, the money so received by any county to be placed in its general fund and expended under the supervision of its board of supervisors "upon the trunk line highways within such county."   It was provided, however, that, if there were no such trunk line highways established, the money should be expended upon the highways of the county.

By amendment (Act No. 59, Pub. Acts 1927, 1 Comp. Laws 1929, §§ 3756, 3757), the amount of the tax was fixed at ten cents per acre, and the moneys received were to be prorated by the county treasurer among the townships and school districts in the manner therein provided.

This act was further amended by Act No. 305, Pub. Acts 1931, by exempting therefrom in the first section State game farms and State parks for which a caretaker is provided.   Section 2 reads as follows:

"The department of conservation shall enter upon their records against each description of said lands the amounts provided by this act and shall

certify the same to the auditor general, who shall draw his warrant on the State treasurer therefor, the tax on State homestead and State swamp lands under the control of the department of conservation to be paid out of any moneys in the general fund not otherwise appropriated; and the tax on any and all other lands held by the department of conservation, except any State park, for which a caretaker is provided, shall be exempt from the provisions of this act up to one thousand acres, to be paid from moneys in the game protection fund. Such amounts shall be forwarded by the department of conservation to the county treasurers."

This act was approved by the governor on June 8, 1931.

Act No. 286, Pub. Acts 1929 (2 Comp. Laws 1929, § 6200 et seq.) provides for the protection of game animals, birds, etc., and regulates the manner of hunting them, etc. Chapter 4 (2 Comp. Laws 1929, § 6229 et seq.) provides for the issuance of licenses and the collection of fees therefor by the director of conservation. Section 12 (2 Comp. Laws 1929, § 6240) reads as follows:

"All persons authorized to sell licenses as herein provided, *except conservation officers who receive a regular salary from the State, shall retain as compensation for taking the affidavit herein provided and issuing of said license the sum of ten cents for each license so issued and* shall on or before the tenth day of each month send direct to the director of conservation the balance of all moneys received by him during the preceding month for the sale of licenses under the provisions of this act. As soon as practicable the director of conservation shall send all moneys received by him for the sale of small game hunting and trapping licenses to the auditor general, together with a statement as to the amount of money received and the source from

which it came. The auditor general shall credit all moneys received by him from the director of conservation from the sale of such licenses to the game and fish protection fund: *Provided, however,* That all moneys now in the State treasury to the credit of the game and fish protection fund, as established by act one hundred eight of the public acts of nineteen hundred thirteen, are hereby transferred to the game and fish protection fund established by this act. Upon itemized bill, when audited and duly certified by the director of conservation, all moneys credited to the game and fish protection fund shall be paid out by the State treasurer upon warrants by the auditor general:''

and the purposes for which such moneys are to be expended are particularly specified.

This act (No. 286) was amended by Act No. 325, Pub. Acts 1931, approved June 16, 1931. While changes were made thereby in many of the sections, the only material change made in section 12 was in the elimination of the words which we have caused to be italicized therein.

It is alleged in the bill of complaint herein that George Hogarth, the director of conservation, acting under Act No. 305, had submitted to the auditor general an apportionment of the moneys to which the counties were entitled, to be paid out of ''the game protection fund,'' and had requested that warrants be drawn on the State treasurer for the same; that the provision therefor is unconstitutional, and was in fact repealed by Act No. 325. An injunction restraining such payments was sought.

The defendants answered, denying that plaintiffs were entitled to the relief prayed for, and, after a hearing on the bill and answer, the trial court entered a decree dismissing the bill, from which plaintiffs have taken this appeal.

Was Act No. 305 repealed by Act No. 325? The latter act contains no repealing clause, but counsel for the plaintiffs urges that its provisions for the disposition of moneys "in the game protection fund" are so inconsistent with those in Act No. 305 that an intent to repeal it should be implied. Had Act No. 325 changed the provision in the act which it amended (Act No. 286) for the disposition of such moneys, a different question would be presented. But the change made in section 12, before referred to, in no way affected such disposition. The purpose of an amendment is to make such addition to, or change in, the original act as in the judgment of the legislature will better carry out the purpose for which it was enacted.

"Where an act is amended 'so as to read as follows' (as Act No. 286 was) the part of the original act which remains unchanged is considered as having continued in force as the law from the time of its original enactment and the new portion as having become the law only at the time of the amendment." 25 R. C. L. p. 907.

The general rule thus stated has been adopted by this court:

"An amendment to a statute will generally be considered as a part of original act and the entire act as amended be given the construction which would be given it if the amendment were a part of the original act." *People, ex rel. Attorney General,* v. *Railroad Co.* (syllabus), 145 Mich. 140.

While Act No. 305 does not in express terms amend section 12 of Act No. 286, above referred to, it does provide that the tax on certain State lands shall be paid out of the "game protection fund" when in the hands of the State treasurer, and this

provision is in no way affected by the amendment to this section in Act No. 325.

Another of the questions involved is thus stated by counsel for appellants:

"Can license money designated by statute for a particular purpose be diverted to general tax purposes?"

The purpose of Act No. 116 is apparent. Very considerable tracts of land in the northern part of the State were held by the State as State tax homestead lands and State swamp lands. While these lands were within the limits of townships and school districts, no tax could be spread thereon. It was expected that these tracts and others which should be added would become reforested and the timber thereon be of value to the State, in which the title rested. In the meantime, they were placed in forest reserves, State parks, and State game refuges under the control of the director of conservation and subject to use by the public for trapping and hunting under such regulations as were provided in Act No. 286. When large tracts were thus assembled, it became necessary to construct highways through them, and the tax first provided for was to be used for this purpose. It afterwards appeared to the legislature, as indicated by the legislation, that the tax should be increased, and, in view of the fact that no tax for local purposes could be levied on these lands, that the counties, townships, and school districts should be reimbursed, in part at least, for the loss thus sustained, by payment of the tax out of the treasury of the State, to be prorated as therein provided for. The lands so taxed are largely within the limits to which resort may be had for trapping and hunting, and the legislature in its wisdom provided by Act No. 305 that a part of the moneys received

by the State and placed in the game protection fund should be used for this purpose.

The taxes spread upon State tax homestead and State swamp lands under the control of the department of conservation are to be paid out of the general fund of the State, and those on other lands under such control, with the exception noted, are to be paid out of moneys in the game protection fund. This fund has many sources of income besides that paid into it from collections for licenses and permits issued under chapter 4 above referred to. Section 6281 provides for licenses for dealers in furs; section 6359 *et seq.* for fishing licenses, and these and other such fees are all placed in the game protection fund. Section 6147 provides that the proceeds of property confiscated when used in violation of law shall be placed in the same fund.

We have no constitutional provision in this State providing that moneys received from licenses shall be appropriated to a designated purpose.

"Subject to constitutional restrictions the disposition to be made of the moneys collected as license fees or taxes is within the discretion of the legislature, or municipal authorities, under power from the legislature, such disposition or appropriation usually being made by the statute or ordinance which imposes the license taxes. But where the Constitution or a statute provides that license money shall be appropriated to certain designated purposes, it cannot be lawfully applied to any other purpose. Such funds may be appropriated wholly to the uses of the county or municipality in which they are collected; or the whole or a certain portion thereof may be required to be paid over to the State treasurer for uses of the State, or to counties other than that in which collected; or where collected by

a municipal corporation, the whole or a certain portion thereof may be required to be paid over to the county treasurer for uses of the county. Where the moneys are directed by law to be paid into the State, county, or municipal treasury without specific direction as to their application, they become the property of, and applicable to, the payment of the general obligations of the State, county, or municipality as the case may be.'' 37 C. J. p. 255.

The authorities cited in the footnote, while not directly in point, particularly *State, ex rel. Stevens,* v. *Nickerson,* 97 Neb. 837 (151 N. W. 981), and *Cleary* v. *Johnston,* 79 N. J. Law, 49 (75 Atl. 538), support the text.

It is not urged that the fees charged for licenses or permits which are placed in the game protection fund are unreasonable. That revenue may be incidentally derived therefrom does not in itself determine that it is a tax and not a license, and the disposition which may be made of such fees does not have this effect. *Fletcher Oil Co.* v. *Bay City,* 247 Mich. 572. In that case an ordinance of the city providing for licensing gasoline filling stations, in which the fee was to be paid to the city clerk, and presumably went into the general funds of the city, was upheld.

The dealer's and salesman's license fees required to be paid under the blue sky law (2 Comp. Laws 1929, § 9790) are paid to the securities commission, and pass into the general funds in the State treasury.

In our opinion Act No. 305 was not repealed by Act No. 325, and is constitutional and valid.

The decree dismissing the bill of complaint is affirmed, but without costs.

MCDONALD, C. J., and CLARK, POTTER, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.