# STATE v. BARTLES OIL COMPANY.[1]

January 21, 1916.

Nos. 19,610—(15).

**Police power — inspection of gasolene.**

1. The prevention of fraud and imposition upon the purchasing public in the sale of a commodity, the quality of which is not readily ascertainable, is a proper object of police regulation as well as the protection of public safety; and Laws 1909, c. 502 (G. S. 1913, §§ 3619-3632), providing for the testing of gasolene for gravity, requiring it to be branded "unsafe for illuminating purposes," and requiring the word "gasolene" to be branded and the gravity stenciled on every barrel or package, is a proper police measure and is not in contravention of the Constitution.

**Statute not an interference with interstate commerce.**

2. Where a commodity is shipped from one state into another, its identity not preserved, mingled with other property of like character, held there for sale and not designed for any particular purchaser, or for reshipment to any particular place, it becomes a part of the general mass of the property of the state and is not longer the subject of interstate commerce; and the statute cited operates upon it as a part of the common property of the state and was not intended to operate upon property the subject of interstate commerce.

**Police power — inspection act not a revenue law.**

3. Such a commodity, whether the subject of interstate commerce or a part of the general mass of the property of the state, is subject to inspection under the police power; but the charges must be reasonable and intended for the purpose of covering expenses of inspection and not for the purpose of revenue; and it is *held* that the statute cited is not a revenue law clothed in the guise of an inspection law.

**Constitution — duties on imports.**

4. Const. (U. S.) art. 1, § 10, subd. 2, prohibiting a state from laying duties on imports except such as are necessary in the execution of its inspection laws, refers to imports from foreign countries and not to shipments from state to state.

[1] Reported in 155 N. W. 1035.

Action in the district court for Ramsey county to recover $838.80 fees for inspecting oil and gasolene under Laws 1909, c. 502, during the first nine months of 1914. The answer alleged that all the oil and gasolene inspected by plaintiff had been imported into the state from other states, that all of defendant's business was interstate business, and further alleged that the fees charged for inspection were excessive and constituted a burden upon interstate concerns, and that the act of 1909 was in violation of the Federal Constitution, article 1, sections 1, 8 and 10. The case was tried before Hanft, J., who made findings and ordered judgment for $794.80 and interest. From an order denying its motion for judgment in its favor notwithstanding the decision or for a new trial, defendant appealed. Affirmed.

*Martin H. Albin* and *Frederick M. Catlin,* for appellant.

*Lyndon A. Smith,* Attorney General, and *William J. Stevenson,* Assistant Attorney General, for respondent.

DIBELL, C.

Action by the state to recover inspection fees for inspecting oil and gasolene in accordance with Laws 1909, p. 630, c. 502, now embodied in G. S. 1913, §§ 3619-3632. There were findings for the plaintiff. The defendant appeals from the order denying its motion for a new trial.

1. Particular objection is made to section 7 of the act (G. S. 1913, § 3625), upon the ground that the inspection which it provides for gasolene is not a legitimate police regulation. This section provides that gasolene shall be tested as to gravity, and branded "unsafe for illuminating purposes;" and that every barrel or package containing gasolene shall be branded with the word "gasolene" in red letters and the gravity stenciled thereon. No test other than for gravity is provided. The objection is that this test has no legitimate reference to public safety. The prevention of fraud and imposition upon the purchasing public in the sale of a commodity, the quality of which is not readily ascertainable by the general public, is properly enough the subject of police regulation. In an early case the purpose of inspection laws is stated as follows: "The object of those laws is to protect the community, so far as they apply to domestic sales, from frauds and impositions; and in relation to articles designed for exportation, to preserve the character and reputation of the state in

foreign markets." Clintsman v. Northrop, 8 Cowen, 45. In Patapsco Guano Co. v. North Carolina Board of Agriculture, 171 U. S. 345, 357, 18 Sup. Ct. 862, 43 L. ed. 191, the court, in holding that a statute providing for the inspection of commercial fertilizers was valid when enacted in the exercise of the police power, said: "No doubt can be entertained of this where the inspection is manifestly intended, and calculated in good faith, to protect the public health, the public morals, or the public safety. Minnesota v. Barber, 136 U. S. 313. And it has now been determined that this is so, if the object of the inspection is the prevention of imposition on the public generally."

There is a discussion of the subject in Freund, Police Power, § 272, et seq. We do not conceive that there is any considerable doubt of the propriety of legislation under the police power having as its object the prevention of fraud and imposition upon the purchasing public. The statute requiring inspection as to gravity as a condition of sale within the state impairs no fundamental or constitutional right of the vendor. We do not say that the legislature may not with propriety have considered that there was an element of public safety to be guarded by the statute; but, conceding that this is not so, the statute is easily upheld as a measure intended to prevent imposition upon the purchasing public.

2. It is claimed that the oil and gasolene inspected were the subject of interstate commerce and that the inspection was an unlawful interference with such commerce within the commerce clause of the Constitution. Const. U. S. art. 1, § 8. The defendant is a Minnesota corporation. It has its place of business in St. Paul. It has storage facilities at West St. Paul and at White Bear. It has no other place of business. Oil products are shipped to it from the oil producing states in tank cars and are stored in its storage tanks. They are not "original package" shipments. Savage v. Jones, 225 U. S. 501, 32 Sup. Ct. 715, 56 L. ed. 1182. They are on the defendant's private property, leased or owned, and the cars are switched there and unloaded. The railroads make and the defendant accepts delivery there. The oil and gasolene have no further definite destination. They are for sale. They are incorporated into the general mass of property of the state. Most of such products are sold in Minnesota. Some are sold in other states. When shipped out of the state the inspection charges are rebated—not because the products shipped are the

subject of interstate commerce, but because the state does not impose its inspection for the protection of the public of another state. The oil and gasolene are mixed by the defendant with other oil and gasolene of like quality in the storage tanks. There are no reshipments in the tank cars. Very clearly it is the purpose of the statute to impose an inspection only upon oil products coming into the state and sold to the public. The inspection is imposed for the protection of those to whom the dealer makes sales. It is not for his protection in purchasing from the refineries. The facts in the case of General Oil Co. v. Crain, 209 U. S. 211, 28 Sup. Ct. 475, 52 L. ed. 754, involving a state oil inspection, where it was held that oil at rest in the state, though intended for shipment out of it, was not the subject of interstate commerce, are very much stronger in support of a claim that the property was the subject of interstate commerce than are the facts in the case at bar. Upon this general question see Susquehanna Coal Co. v. Mayor & Council of South Amboy, 228 U. S. 665, 33 Sup. Ct. 712, 57 L. ed. 1015; Bacon v. Illinois, 227 U. S. 504, 33 Sup. Ct. 299, 57 L. ed. 615; Chicago, M. & St. P. Ry. Co. v. Iowa, 233 U. S. 334, 34 Sup. Ct. 592, 58 L. ed. 988. The defendant relies particularly upon D. E. Foote & Co. v. Stanley, 232 U. S. 494, 34 Sup. Ct. 377, 58 L. ed. 698, and Bartels Northern Oil Co. v. Jackman, 29 N. D. 236, 150 N. W. 576, and Castle v. Mason (Ohio), 110 N. E. 463, which were decided in reliance upon it. The Foote case does not overrule the Crain case. On the contrary the Crain case is followed in later cases and the doctrine of it is distinctly approved. We are of the opinion that the inspection for which recovery was had was not an inspection of property the subject of interstate commerce.

3. But if we are mistaken, and if the oil products were the subject of interstate commerce, they were subject to inspection under a statute passed in the proper exercise of the police power though such inspection incidentally affected, if it did not unduly burden, interstate commerce. Savage v. Jones, 225 U. S. 501, 32 Sup. Ct. 715, 56 L. ed. 1182; New Mexico v. Denver & R. G. R. Co. 203 U. S. 38, 27 Sup. Ct. 1, 51 L. ed. 78; Patapsco Guano Co. v. North Carolina Board of Agriculture, 171 U. S. 345, 18 Sup. Ct. 862, 43 L. ed. 191. And whether the subject of interstate commerce or a part of the common property of the state, the inspection charge must be reasonable. It must have reference to the cost

of service. It cannot be a revenue measure clothed in the guise of an inspection law, whether it relates to a subject of interstate commerce or intrastate commerce. Within reasonable limits the amount of the inspection fee is for the legislature. Willis v. Standard Oil Co. 50 Minn. 290, 299, 52 N. W. 652. The amount of the inspection charge is primarily with the legislature and a statute will not be held unconstitutional as providing for an excessive charge, unless it is so unreasonable and disproportionate to the service rendered as to attack the good faith of the law. "The law being otherwise valid, the amount of the inspection fee is not a judicial question; it rests with the legislature to fix the amount, and it can only present a valid objection when it is shown that it is so unreasonable and disproportionate to the services rendered as to attack the good faith of the law." New Mexico v. Denver & R. G. R. Co. 203 U. S. 38, 27 Sup. Ct. 1, 51 L. ed. 78. But, if it clearly appears that it is obviously and largely beyond what is necessary to pay the cost of inspection service, the law will be declared invalid. "If, therefore, it is shown, that the fees are disproportionate to the service rendered; or, that they include the cost of something beyond legitimate inspection to determine quality and condition, the tax must be declared void because such costs, by necessary operation obstruct the freedom of commerce among the states." D. E. Foote & Co. v. Stanley, 232 U. S. 494, 34 Sup. Ct. 377, 58 L. ed. 698. In the Foote case the expenses for the two years shown amounted to 34 and 35 per cent of the inspection receipts. In the North Dakota case the expenses for five years ran from 11 to 20 per cent of the receipts and averaged 16 per cent. · In the Ohio case for a period of six years the expenses ran from 32 to 42 per cent of the receipts and averaged 37 per cent. In Minnesota, from 1903 to 1913, inclusive, a period of 11 years, the expenses fluctuated from time to time and have run from 53 to 98 per cent of the receipts and have averaged 82 per cent. These expenses cover the actual expenses of the oil inspection department with no allowance for incidental services rendered by the other departments of the state. In D. E. Foote & Co. v. Stanley, 232 U. S. 494, 34 Sup. Ct. 377, 58 L. ed. 698, and in Red "C" Oil Mfg. Co. v. Board of Agriculture of North Carolina, 222 U. S. 380, 393, 32 Sup. Ct. 152, 56 L. ed. 240, it was said that the courts do not interfere immediately upon it being made to appear that the amount collected is beyond what is needed for inspection ex-

penses, because of the presumption that the legislature will reduce the fees to a proper amount. The legislature from time to time has made a reduction in the inspection charges. It is proper to note that the last legislature (Laws 1915, p. 380, c. 271), reduced the inspection charges on oil and gasolene in tanks or tank cars containing more than 50 barrels (and we take it that such oil products reach the state largely in tank cars), to seven cents per barrel, it before having been ten cents. This reduction of 30 per cent is substantial, and unless there is a material increase in consumption will greatly reduce receipts.

While we are impressed with the view that in years past the inspection fees have been higher than necessary to meet the expenses of an economical inspection we cannot say, under the rules fixed for our guidance, that the statute is invalid. The increase in consumption has been great, and it was perhaps not easy to foresee the receipts which would come from year to year. The legislature of 1915 made a good-faith endeavor by a reduction of 30 per cent to bring about a proper relation between receipts and inspection fees.

4. Counsel refer to U. S. Const. art. 1, § 10, clause 2, providing that no state, without the consent of Congress, shall lay any duties on imports except such as are necessary for executing its inspection laws. This constitutional provision refers to imports from foreign countries and not to property coming from another state. American Steel & Wire Co. v. Speed, 192 U. S. 500, 24 Sup. Ct. 365, 48 L. ed. 538; New Mexico v. Denver & R. G. R. Co. 203 U. S. 38, 27 Sup. Ct. 1, 51 L. ed. 78; Patapsco Guano Co. v. North Carolina Board of Agriculture, 171 U. S. 345, 18 Sup. Ct. 365, 48 L. ed. 191, and cases cited.

Order affirmed.