# STATE v. PURE OIL COMPANY.[1]

## July 14, 1916.

## Nos. 19,879—(11).

**Inspection of gasolene and oil — statute of 1909 valid.**

State v. Bartles Oil ·Co. .132 Minn. 138, 155 N. W. 1035, holding valid Laws 1909, c. 502 (G. S. 1913, §§ 3619-3632), providing for the inspection of oil and gasolene and fixing the fees therefor, adhered to and followed.

Action in the district court for Ramsey county to recover $10,449, fees under G. S. 1913. § 3630, for the inspection and branding of illuminating oils and gasolene between February 1, 1913, and April 23, 1915. Among other matters the amended answer alleged that the fees prescribed and collected under the oil inspection laws of the state were exorbitant and unlawful and constituted a tax upon and interference with interstate commerce and in violation of the third clause of section 8 of article 1 of the Federal Constitution and therefore absolutely null and void; that they constituted double taxation and as a direct tax upon personal property were in violation of section 1 of article 9 of the state Constitution, and the statutes of the state relating to the taxation of personal property, and that the oil inspection law of 1909 or that part relating to the inspection of gasolene was in violation of section 7 of article 1 and section 1 of article 9 of the state Constitution and of the Fourteenth amendment to the Federal Constitution. The case was tried before Michael, J., who made findings and ordered judgment for $9,191.20 in favor of plaintiff. Defendant's motion for amended findings and its motion for a new trial were denied. Affirmed.

*Nathan H. Chase* and *George E. Dyer,* for appellant.

*Lyndon A. Smith,* Attorney General, and *Egbert S. Oakley,* Assistant Attorney General, for respondent.

[1]Reported in 158 N. W. 723.

BUNN, J.

Action by the state to recover fees, amounting to $10,449, alleged to be due for inspecting illuminating oils and gasolene from February 1, 1913, to April 23, 1915, under the oil inspection law of 1909 (G. S. 1913, §§ 3619-3632). The decision was for the plaintiff, judgment being ordered against defendant in the sum of $9,191.20, with interest and costs. After motions to amend the findings and for a new trial were denied, judgment was entered on the decision. Defendant appealed from this judgment.

The contentions of defendant in this court may be thus stated: (1) The law required inspection of the oils and gasolene prior to the unloading thereof from the tank cars in which they are received, and at this time the commodities are in interstate commerce, the inspection law operating upon them as subjects thereof; (2) the fees prescribed by the act are largely in excess of what was absolutely necessary to its proper enforcement and operation, and the application of the net excess so unlawful, that the act is void, under the Federal Constitution, if the commodities were subjects of interstate commerce, under the state Constitution if they were not; (3) in any case the provisions of the act applying to the inspection of gasolene cannot be sustained as an exercise of the police power, and consequently that act is void to that extent.

It is apparent that these questions are practically identical with those disposed of in State v. Bartles Oil Co. 132 Minn. 138, 155 N. W. 1035. On the first point made by defendant in the present case, this court held in the Bartles case that the inspection, for which a recovery was had, was not an inspection of property the subject of interstate commerce. Defendant thinks we were wrong in that decision, and also claims that the facts in this case differentiate it from the Bartles case. The act challenged was the same in both cases, G. S. 1913, §§ 3619-3632, as they stood before Laws 1915, p. 380, c. 271, was enacted. Section 3628 provided that "oil or gasolene shipped in tanks or tank cars shall not be unloaded until it is duly inspected, providing that such inspection is made within twenty-four hours after the arrival and notice setting forth the number of the car and date of its arrival has been given the inspector." The act does not provide for an inspection after the oil is unloaded, but it does not expressly say, as did Laws 1889, p. 393, c. 246, construed in Wil-

lis v. Standard Oil Co. 50 Minn. 290, 52 N. W. 652, that the oil "shall not be transferred into warehouse or storage tanks, or unloaded, until so inspected." It is evident, however, that inspection after the oil is pumped from a tank car into a storage tank and mingled with other oils, would give little or no indication of the character of the oil taken from the particular tank car. We will note the impracticability, if not impossibility, of having separate storage tanks for the contents of each tank car that arrives. We will therefore treat the act under consideration as contemplating inspection in the original tank cars before they are unloaded, at least wherever it is possible, and the evidence in this case is that the inspection was usually, though not in all instances, so made. We do not think, however, that there is anything here to distinguish this case from the Bartles case. The facts as stated in the opinion in that case [p. 140] are the facts in this case: "Oil products are shipped to it (defendant) from the oil producing states in tank cars and are stored in its storage tanks. * * * They are on the defendant's private property, leased or owned, and the cars are switched there and unloaded. The railroads make and the defendant accepts delivery there. The oil and gasolene have no further definite destination. They are for sale. They are incorporated into the general mass of the property of the state. Most of the products are sold in Minnesota. Some are sold in other states. When shipped out of the state the inspection charges are rebated—not because the products shipped are the subject of interstate commerce, but because the state does not impose its inspection for the protection of the public of another state. The oil and gasolene are mixed by the defendant with other oil and gasolene of like quality in the storage tanks."

It is vigorously and ably argued that the oil and gasolene while in the tank cars, before unloaded into the storage tanks, are the subjects of interstate commerce. It is insisted that the tank cars with their contents are "original packages," and that the statement to the contrary in the opinion in the Bartles case is not supported by reason or authority. Counsel goes quite exhaustively into the decisions from Brown v. Maryland, 12 Wheat. 419, 6 L. ed. 678, to Leisy v. Hardin, 135 U. S. 100, 10 Sup. Ct. 681, 34 L. ed. 128; American Steel & Wire Co. v. Speed, 192 U. S. 500, 24 Sup. Ct. 365, 48 L. ed. 538; General Oil Co. v. Crain, 209 U. S. 211, 28 Sup. Ct. 475, 52 L. ed. 754, and Chicago, M. & St. P. Ry.

Co. v. Iowa, 233 U. S. 334, 34 Sup. Ct. 592, 58 L. ed. 988. We fully appreciate the strength of the argument made, but we still think that the decisions warranted the holding in the Bartles case, and warrant holding in the case at bar that the gasolene and oil, though still in the tank cars waiting to be unloaded, was property brought to rest in this state, and for which the protection of the state is necessary. Though in the Crain case the oil was inspected after it was unloaded from the tank cars into storage tanks, the reasoning of that case, and the decisions in American Steel & Wire Co. v. Speed, supra; Susquehanna Coal Co. v. South Amboy, 228 U. S. 665, 33 Sup. Ct. 712, 57 L. ed. 1015; Bacon v. Illinois, 227 U. S. 504, 33 Sup. Ct. 299, 57 L. ed. 615; and Chicago, M. & St. P. Ry. Co. v. Iowa, supra, give sufficient support to the statement that this is not a controlling fact. The important thing is that the transportation was ended, the oil and gasolene at rest in the state and subject to sale here. The "original package" test for determining when an article ceases to be a subject of interstate commerce is not applicable to cases of this kind. We adhere to and follow the decision in the Bartles case on this point.

But, as said in the Bartles case, if we are mistaken, if the oil and gasolene were subjects of interstate commerce at the time of the inspection, the statute is valid as a proper exercise of the police power, if the inspection, though incidentally affecting, did not unduly burden, interstate commerce. This is not disputed, but it is contended here as it was in the Bartles case, that the inspection charges provided by the act were not reasonable, were so in excess of the cost of inspection as to make the law a revenue measure, rather than an inspection law. The facts bearing upon this question are identical with those in the Bartles case. We held there, after listening to arguments of great ability, and after much deliberation, that it was not shown that the charges provided for were so unreasonable and disproportionate to the cost of rendering the service as to warrant holding the act unconstitutional. We have reexamined the question, after another able presentation, with the result that we adhere to our opinion. We can add nothing to what is said in the opinion in the Bartles case on this point.

The gravity test for gasolene is again attacked in this case. Counsel in the Bartles case laid great stress on this point, and it was decided that the act was in this respect a proper police measure and not in con-

travention of the Constitution. We still have the same opinion. There is force in the claim, based in part upon the testimony of experts, that the gravity test as applied to gasolene is alone of no value for the purpose of determining the quality or volatile character of any but pure, straight run, unblended gasolene. But we are not prepared to say that the legislature had no basis for considering this test some protection of the public against fraud and imposition, if not against danger in the use of gasolene not so tested.

We might well have said simply that the Bartles case controls this on all points, but we have preferred to consider the questions anew in the light of the arguments made in this case. After doing so we conclude that the Bartles case was correctly decided and should be adhered to.

Judgment affirmed.