STATE OF NEBRASKA, PLAINTIFF, V. STANDARD OIL COMPANY ET AL., DEFENDANTS.

FILED FEBRUARY 13, 1917. No. 19518.

1. **Constitutional Law: INSPECTION FEES: REASONABLENESS.** The fee of ten cents a barrel, chargeable for the inspection of oils, under section 2555, Rev. St. 1913, although reasonable at the time of its first enactment, is now, and for many years has been, clearly in excess of the amount reasonably necessary to effectuate the lawful purposes of the act.

2. ——: ——: PRESUMPTION. Where the inspection fees exacted under the state statute average largely more than enough to pay expenses, the presumption is that the state will reduce them to conform to the constitutional authority to impose fees solely to reimburse for expense of inspection.

3. ——: ——. The amount of the excess over what is reasonably necessary to pay the expenses of oil inspection, giving to the law the character of a revenue measure, rather than merely a police measure, has been a matter of public record for many years, and

the legislature, although it has amended the law, has failed to reduce the amount charged for inspection. *Held*, that that portion of section 2555, Rev. St. 1913, fixing the fee at ten cents a barrel as an inspection fee, is void as violative of section 1, art. IX of the Constitution, providing for equal taxation.

Action by the State involving the validity of the Oil Inspection Law. *Judgment for defendants, determining the law invalid.*

*Willis E. Reed, Attorney General, J. J. Sullivan* and *Arthur F. Mullen,* for plaintiff.

*W. D. McHugh* and *Amos Thomas,* contra.

CORNISH, J.

This action involves the validity of the oil inspection law, in so far as it fixes a fee of ten cents a barrel for inspecting oil. In practical operation the receipts for inspection are so far in excess of the cost of inspection as to make the law a revenue measure, rather than one under the police power providing merely for the reasonable expenses of inspection.

The law has been in force since 1895. In April, 1913, the oil department was consolidated with the food, drug and dairy department. The following is a statement of receipts and expenditures:

Total receipts from oil inspection to April,
    1913 ...............................$438,647.51
Total expenses for oil inspection ............217,359.26

Excess of receipts over expenses (50.4 per
    cent.) ...............................$221,288.25
Total receipts from oil inspection alone since
    the consolidation, April, 1913, to May 1,
    1916 ...............................$271,521.33
Total combined expenses for all purposes for
    same period ......................... 134,672.24
Excess of oil inspection receipts over combined expenses (50.4 per cent.) ........$136,849.09

Total receipts from all sources from time of
    consolidation to May 1, 1916 ............$325,918.28
Total combined expenses .................. 134,672.24

Excess of all receipts over all expenses (58.7
    per cent.) ........................$191,246.04

It is agreed by the parties that the present excess of
receipts over expenditures gives the law the character
of a revenue measure, and as a present enactment would
be unconstitutional. It would be violative of section 1,
art. IX of the Constitution, providing for equal taxa-
tion. *State v. Bartles Oil Co.*, 132 Minn. 138; *State v.
Poynter,* 59 Neb. 417; *State v. Savage,* 65 Neb. 714; *Bar-
tels Northern Oil Co. v. Jackman,* 29 N. Dak. 236;
*State v. Cumiskey,* 97 Kan. 343. It would be viola-
tive of the United States Constitution as an attempt
to regulate or interfere with interstate commerce. *Foote
& Co. v. Stanley,* 232 U. S. 494; *Red "C" Oil Mfg. Co.
v. Board of Agriculture,* 222 U. S. 380.

It is the contention of the state that the law does
not cease to be valid until the legislative department of
the state, with knowledge that in its operation the in-
spection fee is excessive, fails or refuses to modify or
repeal the law; that it is a question of good or bad faith
of the legislature. While it is admitted by the defendants
and cross-petitioners that no complaint was made by
them of the operation of the law before this suit was in-
stituted, they contend that the state and its legislative
department have at all times had notice and knowledge of
the wrongful operation of the law; that bad faith is
shown, so far as it is necessary to be shown, when the
law itself in operation proves to be bad; that it is a
question rather of the power of the state to impose
such a tax than of legislative intent. They are not ask-
ing the refunding of money unlawfully paid, but are
objecting to further payment.

The knowledge or notice that the state has had is
evidenced by the following facts: From 1907 to May,

1913, the excess averaged 63 per cent., reported monthly to the state auditor and to the governor. In 1913 the state oil inspector, in his printed report to the governor, used this language: "We of this department are considerably gratified after paying all the expenses of every kind, we are able to turn over to the state treasury for the years 1911 and 1912 something over $76,000." In the printed report of January 1, 1915, 2,500 copies of which were circulated over the state, attention is called to the fact that, since the consolidation of the two departments, $80,000 has been collected over and above the cost of operation of the two departments. The Nebraska Blue Book and Historical Register for 1915, a copy of which was delivered to each member of the legislature, contained a statement, covering the years 1886 to 1912, inclusive, showing: Total receipts for oil inspection $470,-004.75. Total salaries and expenses $228,240.35. Total amount paid to state treasurer $214,238.38. The evidence further shows that, although the legislature has a number of times amended the law governing oil inspection since the first enactment, the ten-cent rate, here involved, has remained the same.

We are of the opinion that these facts show that the state had knowledge, if indeed it is not charged with constructive knowledge, of the practical operation of the law; that, while amending the law, it has seen fit to leave the inspection fee as originally established; that there is no room for indulging the presumption that the legislature has any intention of reducing the inspection fee.

As bearing upon its contention as to bad faith, and the necessity of directly challenging the legislature's attention to the situation, plaintiff cites *Red "C" Oil Mfg. Co. v. Board of Agriculture, supra, Wadhams Oil Co. v. Tracy*, 141 Wis. 150, and *State v. Bartles Oil Co., supra*. In the case first cited the plaintiff attempted to enjoin the enforcement of an act two days after it went into effect. The court, through Chief Justice White, uses language as follows (p. 391): "The mere designation of

the exaction as a tax is not sufficient to warrant the
deduction that the charge authorized for the inspection
was not one really for such purpose. We cannot lightly
attribute improper motives to the law-making power."
The court would not pronounce the law invalid before
trial of it. The question of failure to reduce a fee be-
cause it had proved excessive, and of the presumptions
arising therefrom, was hardly under consideration. The
counterpart of the same question, however, is stated in
the syllabus as follows: "If the inspection fees exacted
under a state statute average largely more than enough
to pay expenses, the presumption is that the state will
reduce them to conform to the constitutional authority
to impose fees solely to reimburse for expense of inspec-
tion."

In *Wadhams Oil Co. v. Tracy, supra,* the plaintiff
sought to enjoin the execution of the law for various rea-
sons. A demurrer to the petition was sustained. While
the petition contained a general allegation that the fees
were exorbitant, the court did not treat it as a case
where, in its operation, the law had proved to be a reve-
nue measure. The court disposes of the question in para-
graph 6 of its syllabus as follows: "An allegation in a
complaint, challenging the legitimacy of an ostensible
police regulation on the ground that the fees provided
for are so large as to show, clearly, that the object there-
of was revenue, does not tender an issue of fact for
confession or denial by the adverse party, when it can
be clearly seen from the face of the pleading, in the
light of common knowledge and established judicial
rules, that the fees are within reason as mere expenses
of executing the law."

The case of *State v. Bartles Oil Co.* 132 Minn. 138,
attaches more importance to legislative bad faith or in-
tention than others cited. In the body of the opinion,
*Foote & Co. v. Stanley, supra,* and *Red "C" Oil Mfg.
Co. v. Board of Agriculture, supra,* are cited as holding:
"That the courts do not interfere immediately upon it

being made to appear that the amount collected is beyond what is needed for inspection expenses, because of the presumption that the legislature will reduce ·the fees to a proper amount." Both of these are cases where the court was considering merely the language of the statute, and not its workings in actual operation. The Minnesota opinion recites the fact that from 1903 to 1913, inclusive, the expenses fluctuated from 53 to 98 per cent. of the receipts, averaging 82 per cent.; that these expenses covered only the actual expenses of oil inspection, with no allowance for incidental services rendered by the other departments of the state. It recites that its last legislature had reduced the fee from ten to seven cents. While admitting that the record shows that the fees have been higher than necessary to meet the expenses of an economical inspection, the court say that, under the rules fixed for its guidance, it cannot say that the statute is invalid.

It will be noted that in the Minnesota case no question of what notice or knowledge the legislature needed to have was considered. So far as the opinion shows, the legislature at all times knew the operation of the law. The facts in that case, as will be noted, are radically different from those in the case in hand, both as to the excessive fees and as to legislative action. We think that a careful consideration of the opinion in the Minnesota case, not the law of it as expressed in the syllabus, will show that about all the court has stated, touching this question, is as follows: It recognizes the law to be that the fixing of an inspection fee is a matter within the reasonable discretion of the law-making body; that the courts have no right or authority to interfere until the law, either on the face of it or in its operation, shows that there has been an abuse of discretion on the part of the legislature. Ordinarily, the legislature at the time of enacting a law cannot know beforehand exactly what its working results will be. It follows that the courts will not ordinarily interfere immediately with its execu-

tion because that would be to say that a law which was reasonably within the discretionary power of the legislature was really enacted in bad faith and intended as a revenue measure. This may be the law. The legislature having a discretionary power and having used it fairly, the courts will always wait until the law is proved bad in operation, and even then will wait until that department of the state, charged with the duty of making and amending its laws, has had time and opportunity to act. Suppose this to be the law. It has no application to a case like the one in hand where for many years the receipts for inspection have been so grossly in excess of expenses of inspection as to give the law the character of a revenue measure, to the knowledge of the state, as shown by the public records.

Whether or not knowledge or good or bad faith of the legislature is a material issue in a case of this kind, we do not decide. It is the opinion of the writer that the legislative intent of members of the legislature is quite immaterial. The legislature must be presumed to intend that the statute will operate as experience demonstrates that it does, in fact, operate.

Let us add that, while it is within the power of the state, for economy or other reasons, to consolidate departments, as was done here, the legislature, in fixing its fees for inspection, should so fix them for each department or business that neither can complain that an unfair proportion of the burden of inspection is placed upon it. The guiding rule for the legislature is to so exercise its discretionary power that the fee established in each business or occupation will, as near as may be, yield an amount not more than reasonably sufficient to pay the cost of inspection in such business or occupation.

We are therefore of the opinion that the inspection fee of ten cents was unenforceable as against the defendants at the time they filed their answer and cross-petition objecting thereto.

Inasmuch, however, as the law requires that inspection should be had before oil can be sold in the state, and it is equitable that the expenses of inspection should be paid by the defendant oil companies, it is ordered that the inspection fees, heretofore collected and now in the hands of the clerk of this court, be retained until the further order of the court.

JUDGMENT FOR DEFENDANTS.