FLOYD L. BOLLEN, APPELLANT, V. WILLIAM B. PRICE, STATE AUDITOR, APPELLEE.

FILED JUNE 28, 1935.   No. 29559.

*Floyd L. Bollen, pro se.*

*William H. Wright, Attorney General,* and *Paul P. Chaney, contra.*

Heard before ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ., and BLACKLEDGE, District Judge.

BLACKLEDGE, District Judge.

The plaintiff, Bollen, member of the Nebraska state railway commission, sought an injunction against Price,

state auditor, to prevent his carrying out the mandate of H. R. 131, Laws 1935, and issuing a warrant to the Nebraska state railway commission for such sum as shall be determined to be due to applicants who had paid in moneys under the provisions of the farm warehouse law (Laws 1933, ch. 4) by reason of the fact that the fees produced by the operation of said law were more than required for the reasonable cost of the inspection of grain and the enforcement of the act and resulted in a surplus of approximately $130,000, remaining on hand in the grain warehouse fund. The judgment was on the pleadings in the trial court and dismissed the plaintiff's cause.

The act of 1933 places the administration of the law in the hands of the Nebraska state railway commission. The fees to be collected as provided by the act for the inspection of grain and issuance of certificates of storage were one-half cent a bushel with a minimum of $5 on each application. There came the nation-wide corn loan program of the national administration. This law fitted well into the plan and was at once put into use. Under it many thousands of certificates of storage were issued and loans made thereon. The volume of business so far exceeded any expectations entertained in the enactment of the law that what at the time seemed a reasonable provision for necessary expenses of enforcement of the act produced a fund largely in excess of the necessities, to the amount named. These facts being apparent to the railway commission and the legislature that convened in January, 1935, they determined that, considering the business theretofore actually transacted, a fee of $3.80 per application, instead of $5 fixed by the act, would have been sufficient, and that this excess amount ought in justice to be returned respectively to those who had paid it.

The result was the enactment of H. R. 131, Laws 1935, which recites these and other facts in the preamble and enacts that the persons paying such fees shall have returned to them the excess over $3.80, and that the railway commission shall from its records determine the several

amounts due to such persons and prepare and certify such list under its seal in the form of a voucher to the state auditor. Thus far everything seems to all parties to be agreeable and constitutional.

The senate added a provision to the act to the effect that the auditor should thereupon issue a warrant to the railway commission for the gross sum so represented and that the railway commission should distribute the funds to the parties so entitled—and thereby precipitated this lawsuit.

It is urged on behalf of appellant that the act is violative of three provisions of the Constitution designated as section 25, art. III, which provides: "No money shall be drawn from the treasury except in pursuance of a specific appropriation made by law, and on the presentation of a warrant issued by the auditor thereon;" and section 25, art. IV, which provides: "All fees that may hereafter be payable by law for services performed, or received by an officer provided for in this article, by virtue of his office shall be paid forthwith into the state treasury;" and section 9, art. VIII, which provides: "The legislature shall provide by law that all claims upon the treasury shall be examined and adjusted by the auditor and approved by the secretary of state, before any warrant for the amount allowed shall be drawn."

This act, H. R. 131, provides:

"The Nebraska state railway commission shall, from its books and records, determine the amount due, if any, to every person who has paid or may pay the fee required by section 88-323, Comp. St. Supp. 1933. The commission shall prepare a list of the names of such persons, their post office addresses and the amount due each of such persons, and shall certify such list in the form of voucher, under the seal of the commission, to the state auditor of Nebraska. The state auditor, upon receipt of such list, shall issue a warrant to the Nebraska state railway commission for the total sum certified in said voucher payable from the grain warehouse fund in the state treasury.

"When such warrant has been issued and properly signed by the proper state officers, the state auditor shall deliver the same to the Nebraska state railway commission, and upon receipt of the same the Nebraska state railway commission shall disburse the said funds to the parties entitled thereto and according to said list as shown by the records and files of said commission."

The last two paragraphs as have been quoted from H. R. 131, Laws 1935, furnish the basis for the contentions of plaintiff herein.

In argument as to rules of construction proper to be applied, reference has been made to certain propositions heretofore announced by this court to which attention had perhaps better first be given.

There is argument as to the proper designation to be given this fund, which it is conceded is properly in the state treasury, whether it consists of excess fees or whether it is a trust fund without a name. We do not think it is material by what name it shall be designated. The facts are it was paid and collected as fees under the provisions of the act of 1933 and, under the rule of *State v. Moore*, 46 Neb. 373, was not merely entrusted to the state treasurer as custodian, but was actually in the treasury and became a part of the state's funds entrusted to the treasurer in his official capacity as such officer.

It is further suggested upon the authority of *State v. Standard Oil Co.*, 100 Neb. 826, *Century Oil Co. v. Department of Agriculture*, 110 Neb. 100, and *Century Oil Co. v. Department of Agriculture*, 112 Neb. 73, that the fund is unconstitutionally held or that on some theory this act of 1933 has been smitten with unconstitutionality. We fear there have been some rather loose expressions in reference to this matter of unconstitutionality. The theory of the oil cases, which is the settled doctrine of this court, is that, the measure having been enacted as a proper measure of control and not as a revenue measure, the extent of its authority is to provide such fund as shall be reasonably necessary and sufficient to the accomplishment of the pur-

pose of the act and that there is no authority for the collection of a greater sum. In the oil cases there was no controversy as to the funds already collected and in the hands of the state treasurer and that controversy was limited to the fund collected or to be collected from the time of the institution of the action. Therein the court determined that the statutory rate fixed was in excess of the reasonable requirements of the act and directed a refund of such excess, but not of the whole sum. The act we are now considering seeks to look both ways and cover the disposition of funds already collected and in the treasury and those that may be paid in under the act. It cannot reasonably be said that an act, lawful and constitutional when it is enacted, became unconstitutional overnight. The act of 1933, under the situation as it was when adopted, appeared to be reasonable and to provide no more than was reasonably necessary for the administration of the act. To that extent all parties concede it to be lawful. The legislature had the right and power to determine in advance what it considered a reasonable provision for that purpose and it cannot be said that, because of the unforeseen circumstances which developed a fund very much larger than could have been beforehand reasonably anticipated, the act itself was inflicted with any infirmity. It simply by reason of those unforeseen conditions produced more money than was necessary for the purpose intended. Any collections thereof under like conditions, in so far as concerned the excess, might have been enjoined as was done in the oil cases. The legislature might, in the light of later developments, with propriety determine what would be a reasonable charge and make provision for the refunding of that which circumstances have shown to be an excess in collection over the amount necessary for the purpose intended. No objection is here made to the manner of prorating the amounts to be returned and it seems equitable. But none of these furnishes a basis for the application of the term "unconstitutional." It must be admitted that the fund as first collected was lawful and con-

tinued so to be up to the point where sufficient had been accumulated in it to accomplish the purpose of the act. At what particular time or place such condition was reached, we are not informed by the record and perhaps could not be; so we have here simply and only a fund collected as fees which in the aggregate amounts to more than was necessary for the purpose intended, which the state is not entitled to take over as revenue, which should in justice be returned to those who paid it, and which is a part of the state's fund in the state treasury. Again referring to *State v. Moore, supra,* the logical conclusion is that constitutional provisions and legislative enactments in regard to the drawing of warrants by the auditor must apply.

Considering now the further argument as to the matter of whether the act of 1935, H. R. 131, constituted a sufficiently definite and specific appropriation of the fund to the purpose intended, while we are constrained to the opinion that the designation of the return of $1.20 out of each $5 that had been paid into this fund by the respective applicants is sufficiently definite to meet all constitutional requirements, the matter may be set at rest so far as this case is concerned for the reason that the legislature still in session at the time this case was submitted enacted an additional appropriation measure with the emergency clause (H. R. 689) specifically appropriating the sum of $127,000, to the purpose designated by the prior act (H. R. 131.) The act further provides an appropriation of $4,326.44, for the purpose of paying extra expenses of the railway commission in determining the amount due the several persons and the making of refunds, thus indicating rather clearly the intention and purpose of the legislature that the refunding of these amounts to the several beneficiaries should be accomplished, in its final details, by the railway commission. The argument, therefore, as to the sufficiency of the appropriation under section 25, art. III of the Constitution, may be dismissed without further consideration.

The argument as to section 25, art. IV of the Constitu-

tion, in reference to the requirement that all such moneys shall be paid forthwith into the state treasury does not raise any material question. The payment, it is conceded by all, was made and the money is there. There is suggested the question whether, upon receipt by the commission of such warrant representing a part of these fees collected, it might be the duty of the commission to immediately repay the same, as fees collected, into the state treasury. The statement of the proposition is sufficient to require a negative answer.

We proceed then to consideration of the third constitutional question, namely, whether the procedure as prescribed by this act covering the distribution of the money is a sufficient compliance with section 9, art. VIII of the Constitution. The argument of the plaintiff is to the effect that this section of the Constitution requires the issuance of a particular warrant to each of the beneficiaries by the state auditor and that it may not be accomplished by the issuance of one warrant to the railway commission which is charged with thereupon making the distribution according to its records as made and certified to the auditor. The legislature has full authority to provide for the proper vouchering of claims which are to be examined and adjusted by the auditor and has done so in the provisions of sections 77-2612, 77-2613, 77-2614, Comp. St. 1929. It is obvious that the legislature has and must have a wide latitude in providing for the appropriation and disbursement of funds, and that in so doing its authority is paramount, subject only to the requirement that the provisions shall be within the requirements of the Constitution. This provision of the Constitution does not undertake to specify the details of the manner in which claims shall be presented or vouchered. It requires only that the legislature provide by law that the same shall be presented that they may be examined and adjusted by the auditor and approved by the secretary of state before any warrants shall be drawn. The argument presented assumes that the method prescribed by the act under consideration is not in

conformity to the requirements of this section of the Constitution, but the reasoning in support of it is not convincing. The original act placed the conduct of this business and the use of the fund so collected in the hands of the railway commission. It is apparent that there in the books and records of the commission may be found the most authoritative record that exists of just what was done, by whom and in what amounts these fees have been contributed. The act of 1935 requires that the commission prepare from its records and certify to the auditor a complete list of those persons, with names, post office addresses, and the respective amounts accruing to each. It does not purport to relieve the auditor from his ordinary official duties to examine and adjust the claims so presented; on the contrary, it seems to present a rather extensive and easily complicated matter in a simple and businesslike form, so that the auditor in his official business might more readily examine and adjust the several items and have before him the official evidence upon which the same rest in a much more businesslike and accurate manner than would be the case if he were required to examine so many separate claims and vouchers. In fact, the argument of the appellant proves too much; for, although it objects to the issuance of the warrant in this consolidated form, appellant concedes in his brief that the presentation and vouchering of the claim in accordance with the provisions of this act is sufficient, and his only objection is that, when the point of issuing the warrant is reached, instead of it being issued in one warrant to the railway commission and the latter being charged with the distribution of the fund, the final individual distribution must be made by the auditor instead. We perceive no good reason why this should be the case. Whether it is a good business custom, or whether the procedure might be properly or constitutionally adopted as a general course of conduct for any of the executive departments, is not the present question and is not determined. The legislature has not undertaken to set up any general rule of procedure for any department. It had be-

fore it a specific instance of a specific fund of which it has undertaken to direct the disposal in a particular manner. It seems clearly within the authority of the legislature and no sufficient reason is presented why any officer whose duties are involved may not perform his full duty in connection with the allowance of this claim. The added duty of making the distribution of the fund and furnishing to the auditor evidence under which such distribution is to be made is placed upon the railway commission which has at all times had charge of the activities resulting in the fund, is the body for whose use the fund was created, and, it seems, has properly been designated as the department to make the final distribution. This procedure, as we view it, allows the application of every constitutional provision and every statutory enactment in its full force, and reserves to the legislature the authority belonging to it to, within constitutional limits, direct and control the disposition of state funds.

The judgment of the district court was therefore right and it is

AFFIRMED.