POWER OIL COMPANY ET AL., APPELLEES, V. R. L. COCHRAN
ET AL., APPELLANTS.
295 N. W. 805

FILED JANUARY 10, 1941.   No. 31068.

*Walter R. Johnson, Attorney General,* and *Clarence S. Beck,* for appellants.

*George I. Craven, contra.*

*Kennedy, Holland, De Lacy & Svoboda, amici curiæ.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, MESSMORE and YEAGER, JJ., and ELDRED, District Judge.

YEAGER, J.

This is a case wherein Power Oil Company, a corporation, a dealer in, and importer of, refined petroleum products in the state of Nebraska, and 92 other such dealers similarly situated, joined in the institution of this action in the district court for Lancaster county, Nebraska, against R. L. Cochran, governor, and a member of the Nebraska Advertising Commission; Louis Buchholz, director of the department of agriculture and inspection; John A. Ainlay, chief of the department of motor fuels, secretary and a member of the Nebraska Advertising Commission; John Havekost, state treasurer; Ray C. Johnson, auditor of public accounts; Grove Porter, Frank Bell, Jr., Harry Miller, Wade Martin, and Keith Neville, members of the Nebraska Advertising Commission; the department of agriculture and inspection, and the Nebraska Advertising Commission. The action is for the benefit of the plaintiffs and all others similarly situated in the state of Nebraska.

The purposes of the action, briefly stated, are (1) to have declared unconstitutional, null and void section 3 of House Roll 388 (Laws 1933, ch. 116, Comp. St. Supp. 1939, sec. 66-303), being the section of the statute providing for inspection fees for inspection and testing of motor or vehicle fuels, gasoline, kerosene, and other products of petroleum manufactured, sold or offered for sale in this state for illumination, heating, cleaning and power purposes, herein-

after referred to as refined petroleum products; (2) to have Legislative Bill 471 (Laws 1939, ch. 130), being the so-called State Advertising Law, declared unconstitutional, null and void; (3) to have section 38 of Legislative Bill 521 (Laws 1939, ch. 133) declared unconstitutional, being a part of a general appropriation bill wherein $97,198.60 was appropriated to the bureau of dairies, foods and drugs from excess fees in the refined petroleum products inspection fund, which fees had accumulated as an unexpended balance for the biennium beginning in 1937 and ending in 1939; (4) to enjoin and prevent the defendants from collecting inspection fees fixed by said section 3 of House Roll 388, or, in the alternative, that they be enjoined from collecting fees in excess of 0.7 cents per 50-gallon barrel, the statutory fee being 1½ cents per 50-gallon barrel; (5) to enjoin the defendants from enforcing any part of section 3 of Legislative Bill 471, being the section providing the appropriation of $50,000 for the Nebraska Advertising Commission; and (6) that an accounting be had of all fees collected under said section 3 of House Roll 388, and that the court devise a plan whereby the plaintiffs and all others similarly situated could present and make proof of claims against the claimed excess in the fund accumulated from inspection fees provided for by the act; that the claims be apportioned and that no further fees be collected until future fees of the plaintiffs at the rate of 0.7 cents per 50-gallon barrel should equal the claimed excess fees in the fund and that thereafter the inspection fee should be collected but not exceed 0.7 cents per 50-gallon barrel.

The case was tried to the court and at the conclusion of the trial the court found that said section 3 of House Roll 388 was not unconstitutional *in toto*, but that the collection of inspection fees thereunder in excess of 0.7 cents per 50-gallon barrel was unconstitutional, null and void, and enjoined collection of fees in excess of such rate; that said Legislative Bill 471 was not unconstitutional, null and void; that said Legislative Bill 521 was not unconstitutional, null and void; that an injunction to enjoin the enforcement of

any part of section 3 of said Legislative Bill 471 should not be granted; and that an accounting of the fees collected under section 3 of House Roll 388 and the other relief prayed for in connection therewith should be denied. From the parts of the decree which are favorable to plaintiffs the defendants have appealed and from those that are in favor of defendants the plaintiffs have cross-appealed. And incidentally on order of the district court, duly and timely excepted to by plaintiffs, the defendants were allowed to supersede without bond. The propriety of this order is attacked by motion in this court and it will be discussed later herein.

For convenience and clarity in discussion, plaintiffs and cross-appellants will be referred to as plaintiffs and defendants and appellants will be referred to as defendants.

On the proposition of the constitutionality and validity of said section 3 of House Roll 388 in its entirety, which is the inspection fee section of the act providing for inspection of refined petroleum products, there is no need for extended discussion, since it is well settled that an inspection fee which is in an amount reasonably necessary to defray the expense of inspection is proper and will not be disturbed. *Century Oil Co. v. Department of Agriculture,* 112 Neb. 73, 198 N. W. 569; *State v. Bartles Oil Co.,* 132 Minn. 138, 155 N. W. 1035; *State v. Pure Oil Co.,* 134 Minn. 101, 158 N. W. 723; *Pure Oil Co. v. State of Minnesota,* 248 U. S. 158, 39 S. Ct. 35, 63 L. Ed. 180. In truth, the plaintiffs in their brief concede the rule and do not question its soundness.

A much more serious problem arises in connection with the claim that the statutory fee of 1½ cents per 50-gallon barrel is in excess of an amount reasonably necessary to defray the expense of inspection. In a determination of this question a number of elements must be considered.

Is the act, or section 3 thereof, now, or has it been in the past, by results of operation and enforcement, a revenue measure? The decree of the district court holds that it is and has been a revenue measure to the extent of the excess over 0.7 cents per 50-gallon barrel since July 1, 1933. As-

suming that it has been a revenue measure in part, is it necessary to consider that question for the entire period? If it need not be considered for the entire period, must it be considered and determined for a part of the period? If for a part of the period, then what part?

In connection with the answer to these questions section 2 of the 1933 act provides the functions of the department of agriculture and inspection, which are numerous. They need not be enumerated here. Section 1 provides the power and provides for the mechanics of inspection and is as follows:

"The department of agriculture and inspection shall enforce the provisions of this article. It shall make, or cause to be made, all necessary examinations and shall have authority to promulgate such rules and regulations as are necessary to promptly and effectively enforce the provisions of this article."

Section 3, as hereinbefore indicated, contains the inspection fee provisions and none other.

By Legislative Bill 331 (Laws 1939, ch. 85, Comp. St. Supp. 1939, sec. 66-320), which became effective May 31, 1939, there was created in the department of agriculture and inspection a division of motor fuels which was designed to take over the administration of House Roll 388, and three other functions relative to motor fuels. Thus, at the time of the commencement of this action, there had been no change in the law relating to the collection of inspection fees since the enactment of House Roll 388 in 1933, except the transfer of enforcement generally from the department of agriculture and inspection to a division of motor fuels in the department with a chief and necessary deputies and assistants appointed by the governor.

It will be observed that the purpose of the act is a matter of legislative declaration, but the mechanics of inspection from 1933 to 1939 were, by legislative declaration, placed in the hands of the department of agriculture and inspection and thereafter in the division of motor fuels. For the period prior to May 31, 1939, or the effective date of said

Legislative Bill 331, we are not favored in the bill of exceptions with any competent evidence of any rules or regulations under which inspections were made. It appears that none were made or promulgated. It appears further that none came into being by departmental custom and usage. It appears that the work involved in inspection in its various phases was assigned to employees of the department of agriculture and inspection who at the same time were engaged in the execution of the more than 25 other functions of the department. A limited number of employees of the department were engaged full time in connection with the particular function of refined petroleum products inspection. The respective heads of the department of agriculture and inspection, on the basis of a general knowledge of the functionings of the various divisions of the department, without statistical data or foundation, and in the form of opinion, except as to full time employees in the refined petroleum products inspection division, were allowed, over objection, to testify to the proportion of time the employees of the department devoted to motor fuel inspection and to the proportion of the expense of the facilities of the department which was attributable to this division.

With this as a basis for salary and operations expense and with the biennium as the unit for calculation and computation, an auditor found that for the biennium beginning July 1, 1933, and ending June 30, 1935, inspection fees amounted to $171,108.37, with a total cost of inspection in the amount of $60,746.81, leaving a balance of $110,361.56; that for the biennium beginning July 1, 1935, and ending June 30, 1937, inspection fees amounted to $203,332.14, with a total cost of inspection in the amount of $90,175.25, leaving a balance of $113,156.89; and that for the biennium beginning July 1, 1937, and ending June 30, 1939, inspection fees amounted to $208,411.30, with a total cost of inspection in the amount of $101,737.93, leaving a balance of $106,673.47, which represents a total excess over cost of inspection for six years or three bienniums of $330,191.92.

If this computation is basicly sound, it would appear that

for the period covered the inspection fees were much in excess of requirements for inspection. It would then necessarily follow, if due, proper and timely challenge had been made, that the courts would have been required to hold that the excess over the then amount reasonably necessary to defray the expense of inspection was unconstitutional, null and void. *Century Oil Co. v. Department of Agriculture, supra; Century Oil Co. v. Department of Agriculture,* 110 Neb. 100, 192 N. W. 958; *State v. Standard Oil Co.,* 100 Neb. 826, 161 N. W. 537.

We think, however, that a determination of that matter is not now before the court. All fees paid for this entire period were paid by all plaintiffs and others similarly situated voluntarily and without protest and without any demand for refund ever having been made, unless the prayer of the petition in this case for an accounting amounts to a demand for refund. This being true, after each biennium and the first fiscal quarter after the next regular session of the legislature, all such excesses lapsed and could not be spent or used for any purpose except by appropriation of the legislature. Const. art. III, sec. 22; *State v. Moore,* 36 Neb. 579, 54 N. W. 866; *State v. Babcock,* 22 Neb. 33, 33 N. W. 709; *State v. Brian,* 84 Neb. 30, 120 N. W. 916; *Opinion of the Judges,* 5 Neb. 566; *Bollen v. Price,* 129 Neb. 342, 261 N. W. 689.

This being true, it was beyond the power of the district court and is beyond the power of this court to determine directly the question of excessiveness of inspection fees for the six-year period from July 1, 1933, to June 30, 1939. This is especially true in the light of the biennial basis of the operation of the state and its various supported departments and agencies which requires departmental and agency estimates and legislative appropriations to meet the requirements. Const. art. III, sec. 22; Comp. St. 1929, secs. 81-301 to 81-315; *State v. Moore,* 50 Neb. 88, 69 N. W. 373; *State v. Cornell,* 60 Neb. 276, 83 N. W. 72; *State v. Babcock, supra; State v. Moore, supra.*

Whether this procedure was followed in whole or in part

in the matter of motor fuel inspection for the three biennial periods beginning July 1, 1933, and ending June 30, 1939, is not ascertainable from the record in this case.

The first time, from the standpoint of the record in this case, that appropriate estimates were made was after the enactment of Legislative Bill 331, being the act which created a division of motor fuels in the department of agriculture and inspection. Pursuant to authority contained in this act, John A. Ainlay was duly appointed head of the division with the title of chief of the bureau of motor fuels. In compliance with legal requirements, Ainlay made an estimate of probable income from inspection fees and also an estimate of cost of necessary equipment, facilities and operations expense for proper, necessary and sufficient inspection. An exhibit containing the detailed estimates is in evidence in this case. The estimated income is $102,000 a year and the inspection cost $98,360. This excess of inspection fees over cost of operation could not be considered unreasonable under the rule that the fees must not produce a greater amount of money than is reasonably necessary to defray the cost of inspection.

The design of inspection, as set forth in the estimate, was definitely that of Ainlay, one that he considered necessary for proper inspection. This was proper, since the 1933 act impressed the duty on the department of agriculture and inspection, but the 1939 act transferred it to the division of motor fuels.

The legislature having, wisely or unwisely, entrusted these functions to the division of motor fuels, the only proper matter for determination by the courts is the question of whether or not, in the light of the program outlined, the inspection fees provided by the act in question are reasonably necessary to defray the expense of inspection. If they are reasonably necessary they will not be disturbed.

It may be true that the legislature by reposing the broad powers it did in the department of agriculture and inspection in the first instance and later in the division of motor fuels acted unwisely, but the courts cannot take note of it.

The courts are not arbiters of legislative wisdom, but function as a check upon unauthorized and unconstitutional assumptions of power. *Nebraska Telephone Co. v. State,* 55 Neb. 627, 76 N. W. 171; *Schultz v. State,* 89 Neb. 34, 130 N. W. 972; *Bradshaw v. City of Omaha,* 1 Neb. 16. This rule is accepted generally in all jurisdictions.

The plaintiffs raise the question in their brief that the program and its costs as set forth by the division of motor fuels in its estimate is, in part, unnecessary, and excessive. If this is a matter of proper inquiry, it is sufficiently met by the evidence of the plaintiffs. The evidence, fairly summarized, on this subject is to the effect that during the three previous biennial periods some of the kinds and character of equipment and facilities designated in the Ainlay estimate were not supplied or used; that in the opinions of respective former heads of the department of agriculture and inspection they were not necessary to a proper inspection; that in the opinion of these former department heads the increased number of employees was not necessary; that in the opinion of these same department heads the cost of inspection for the previous six years was sufficient and that the expenditure of a like annual amount would be sufficient and adequate for proper and reasonable inspection in the future. These opinions are recorded without foundation of detailed past practices, or of future needs except such needs as are outlined in the estimate supplied by the division of motor fuels. There is therefore no evidentiary basis for the claim that the program and its cost is, in part, unnecessary and excessive when viewed prospectively as must be done. This court has adopted and followed the rule that in case of a statute fixing the amount of inspection fees such legislation should be construed prospectively, unless the statute itself clearly indicates that it shall be construed retrospectively. *War Finance Corporation v. Thornton,* 118 Neb. 797, 226 N. W. 454; *Travelers Ins. Co. v. Ohler,* 119 Neb. 121, 227 N. W. 449; *Bliss v. Redding,* 121 Neb. 69, 236 N. W. 181.

The showing of plaintiffs is neither prospective nor retro-

spective. It fails to disclose detailed functioning before and failed to break down the program of the division of motor fuels so as to show that cost of proposed equipment and facilities was too high or that there was substantial lack of propriety in the use of such equipment and facilities.

As has already been indicated, it appears that, over the periods before the enactment of Legislative Bill 521, large excesses over cost of inspection accumulated in the inspection fund. It further appears that a considerable excess accumulated after the operative date of this act and the date of the commencement of this action.

As to the latter, it appears that from July 1, 1939, to October 31, 1939, inspection fees collected amounted to $49,-522.52, while inspection cost for the same period amounted to $18,876.16, thus creating an excess of fees over costs paid out in the amount of $30,646.34. On the face this would indicate that fees in prospect for the biennium beginning July 1, 1939, were excessive. However, while this in time may prove to be the fact, in the light of the record in this case this cannot be determined at this time. This becomes apparent when we recall that a sufficient opportunity has not been afforded to put into effect more than a part of the program of the division of motor fuels. Time as an element and ability to procure equipment, together with the injunctive processes of the district court, have militated against a completed program. It may be that in time experience will show that cost of inspection will be far less than the fees provided by the statute in question, but until it does so tangibly appear, that is a question which is beyond the power of the court to determine. On the face of the record it cannot now be said that the inspection fee for the inspection of refined petroleum products is excessive.

We now approach the determination of the constitutionality and validity of the reappropriation of $97,198.60 by Legislative Bill 521 (Laws 1939, ch. 133) from inspection fees to the bureau of dairies, foods and drugs; and $50,000 by Legislative Bill 471 (Laws 1939, ch. 130) for the uses

of the Nebraska Advertising Commission. In the light of the view that all claimed excess fees which accumulated between July 1, 1933, and June 30, 1939, were unexpended balances, that they lapsed and became the subject of reappropriation by the legislature, and in light of the fact that the bureau of dairies, foods and drugs is a legal and proper agency of state government and entitled to appropriations for its support out of revenues of state, it can hardly be questioned that the appropriation of $97,198.60 was a valid and constitutional act of the legislature.

The constitutionality and validity of the appropriation of the $50,000 for the Nebraska Advertising Commission, we think, must depend on the question of the constitutionality of the act creating the commission. The two must stand or fall together. It is hardly necessary to state that an appropriation of public funds for the sole purpose of making effective an unconstitutional law is void.

The creation by legislative action of a commission to function at public expense to advertise the products of the state and its advantages with the purpose of attracting tourists and industries is something new in this state and, perhaps, in its scope, is more far reaching than legislation of this character in any other state. However, the principle of state advertising is not new, even in this state. The principle and practice of state advertising extends back into antiquity. This fact is pointed out graphically in the opinion in *City of Jacksonville v. Oldham,* 112 Fla. 502, 150 So. 619. The principle has been recognized in *State v. Cornell,* 53 Neb. 556, 74 N. W. 59; *Board of Directors of Alfalfa Irrigation District v. Collins,* 46 Neb. 411, 64 N. W. 1086; *State v. Robinson,* 35 Neb. 401, 53 N. W. 213; *State v. Miller,* 104 Neb. 838, 178 N. W. 846. It is true that the cases have reference to expenditures for advertising by counties, but counties are only arms of the state. The rules announced are not grounded in any sense in county organization but on the principle that legislative power exists to make expenditures for advertising which is for the public benefit. The courts of certain other states have adopted a similar

attitude toward advertising in the interests of the public welfare at public expense. *City of Jacksonville v. Oldham, supra*; *C. V. Floyd Fruit Co. v. Florida Citrus Commission,* 128 Fla. 565, 175 So. 248; *State v. Enking,* 59 Idaho, 321, 82 Pac. (2d) 649; *City of San Antonio v. Paul Anderson Co.,* 41 S. W. (2d) (Tex. Civ. App.) 108; *Anderson v. City of San Antonio,* 123 Tex. 163, 67 S. W. (2d) 1036; *Moreland v. City of San Antonio,* 116 S. W. (2d) (Tex. Civ. App.) 823; *Davis v. City of Taylor,* 123 Tex. 39, 67 S. W. (2d) 1033; *Sacramento Chamber of Commerce v. Stephens,* 212 Cal. 607, 299 Pac. 728; *Lewis v. LaGuardia,* 172 Misc. 82, 14 N. Y. Supp. (2d) 463.

In this field, if limited to the public benefit, the legislature has power to act. Whether it enters the field or not is a matter of legislative discretion. Whether or not the legislature exercised a wise discretion is not a matter that can properly be determined by the courts. The legislature, subject only to the initiative and referendum, and constitutional inhibitions, and provided that legislation is for a public purpose, has an unlimited field within which to legislate. Const. art. III, secs. 1 and 18; *State v. Sheldon,* 78 Neb. 552, 111 N. W. 372; *Smithberger v. Banning,* 129 Neb. 651, 262 N. W. 492; *State v. Board of County Commissioners,* 109 Neb. 35, 189 N. W. 639; *Davis v. State,* 51 Neb. 301, 70 N. W. 984; *State v. Nickerson,* 97 Neb. 837, 151 N. W. 981; *Consumers Coal Co. v. City of Lincoln,* 109 Neb. 51, 189 N. W. 643; *Stewart v. Barton,* 91 Neb. 96, 135 N. W. 381.

No constitutional inhibition has been found against the kind, character and purpose of the advertising contemplated by the language of the legislation in question, and attention has not been directed to any such inhibitory provision or provisions. And again, he who knows only a little of the broad acres, the incomparable beauties, the tremendous natural resources, the potential industrial advantages and possibilities, the need for men and women and capital for development and utilization of our state's potentialities must be blind indeed if he cannot see that advertising which is

calculated to bring people within the borders of Nebraska would be of general benefit to the state, rather than of special or local benefit within the meaning of constitutional inhibitions. The argument that certain individuals engaged in the mechanics of advertising will benefit from this work fails to impress. The adoption of such a theory would bar the functioning of all government.

The determination that the Nebraska Advertising Commission law is not unconstitutional, but that the legislature in enacting it was in the exercise of its legislative power, in the light of what is determined with reference to the appropriation of $97,198.60 to the bureau of dairies, foods and drugs, disposes of the question of the constitutionality and validity of the appropriation of the $50,000 for the commission. The act creating the commission being valid, the appropriation for its functions becomes valid.

This being an action in equity and being tried *de novo* on the record in this court, we find that the district court was correct in determining section 3 of House Roll 388 (Laws 1933, ch. 116, Comp. St. Supp. 1939, sec. 66-303), was not, in its entirety, unconstitutional and null and void; we find however that the court was in error in determining that, as to this act, the collection of an inspection fee in excess of 0.7 cents per 50-gallon barrel, on the evidence adduced and presented, was unconstitutional and null and void. Accordingly, the decree in this respect is reversed, without prejudice, however, to the right to maintain an action to enjoin collection if it may in the future be made to appear by competent evidence that the statutory fee is in excess of what is reasonably necessary for inspection purposes and requirements in the light of the program set up by the division of motor fuels in the department of agriculture and inspection. We find that the court did not err in refusing to declare Legislative Bill 471 (Laws 1939, ch. 130), being the so-called State Advertising Law, unconstitutional and null and void; that the court did not err in refusing to declare section 38 of Legislative Bill 521 (Laws 1939, ch. 133), being a part of an appropriation bill

wherein $97,198.60 was appropriated to the bureau of
dairies, foods and drugs from excess fees in motor fuels
inspection fund, unconstitutional and null and void; that
the court did not err in refusing to enjoin the enforcement
of section 3 of Legislative Bill 471 (Laws 1939, ch. 130),
and the court did not err in refusing to devise a plan where-
by plaintiffs and all others similarly situated could present
claims against the defendants or some of them.

On appeal by defendants to this court, the defendants
were allowed to supersede without bond. This action was
challenged in this court by motion of the plaintiffs request-
ing the court to set aside the order for supersedeas. It was
deemed advisable to treat of this matter in the opinion.

The defendants contended that section 20-2231, Comp.
St. 1929, is applicable here. It provides as follows:

"No bond for costs, appeal, supersedeas or attachment
shall be required of the State of Nebraska, or of any state
officer, state board, state commission, head of any state de-
partment, agent or employee of the state, the secretary of
the department of trade and commerce as receiver of in-
solvent state banks or any receiver appointed on applica-
tion of the State of Nebraska; in any proceedings or court
action in which said state, officer, board, commission, head
of department, agent or employee is a party litigant in its
or his official capacity."

The district court so determined in the order allowing
supersedeas. We think the district court was correct in its
determination, notwithstanding the efforts of plaintiffs to
make this an action against the defendants in their in-
dividual rather than their official capacities. This is par-
ticularly true in view of the decree which upheld the con-
stitutionality of the act as an act which was the subject of
the relief granted plaintiffs and only declared invalid col-
lection of inspection fees under the said act in excess of
0.7 cents per 50-gallon barrel.

There is no question that in cases where the statute
makes no provision for a supersedeas as a matter of right,
the court may in its discretion allow a supersedeas upon

conditions which it may affix. *Home Fire Ins. Co. v. Dutcher*, 48 Neb. 755, 67 N. W. 766. Viewed practically, we think that discretion was not abused in this case. The motion is overruled.

The decree of the district court, therefore, in accordance with the foregoing is reversed in part and affirmed in part.

AFFIRMED IN PART AND REVERSED IN PART.